HENSEL ET AL. *v.* BECKWARD ET UX.

[No. 75, September Term, 1974.]

*Decided December 27, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and O'DONNELL, JJ.

*Robert H. Reinhart,* with whom were *Walsh, Walsh & Reinhart* on the brief, for appellants.

Louis A. Fatkin, with whom were Fatkin & Brubaker on the brief, for appellees.

DIGGES, J., delivered the opinion of the Court. SMITH and LEVINE, JJ., dissent and SMITH, J., filed a dissenting opinion in which LEVINE, J., concurs at page 432 infra.

In Creaser v. Owens, 267 Md. 238, 240-41, 297 A. 2d 235 (1972), the most recent case of this Court which discusses Maryland's motor vehicle "boulevard rule," Maryland Code (1957, 1970 Repl. Vol.) Art. 66 1/2, § 11-403,[1] we indicated our hope that, with the views expressed there, no longer would this statute give rise to either "lingering doubts about the absoluteness of its application," or, other than through legislative enactment, further "attempts to create new exceptions to it." The present litigation, however, has dashed this hope, as once again we are faced with a case in which the application of the "boulevard rule" is sought to be avoided. Like the Rock of Gibraltar we remain firm and will not allow the legislative mandates contained in this right-of-way statute to be judicially either bypassed or otherwise eroded through new waves of attack.

This action was filed in the Circuit Court for Allegany County (Getty, J.) and is here on certiorari after a reversal by the Court of Special Appeals of the trial court's judgment which was entered in favor of the defendant-petitioner as a result of a directed verdict. In considering the correctness of that ruling, we are required to review the evidence, though to a substantial degree controverted, in the light most

---

1. Maryland Code (1957, 1970 Repl. Vol.) Art. 66 1/2, § 11-403 in relevant part states:

"(a) [Provides for the erection of stop or yield signs.]

(b) Stopping at entrance to through highway. — The driver of a vehicle shall come to a full stop as required by this subtitle at the entrance to a through highway and shall yield the right-of-way to other vehicles approaching on the through highway.

(c) Stopping in obedience to stop signs. — The driver of a vehicle likewise shall come to a full stop in obedience to a stop sign and yield the right-of-way to a vehicle approaching on the intersecting highway as required herein at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway.

(d) [Obligation of motorist when approaching intersection marked by yield sign.] "

favorable to the respondent, the party against whom the verdict was directed. *Wood v. Abell,* 268 Md. 214, 230-31, 300 A. 2d 665 (1973). The relevant portions of the evidence when so considered reveal that the accident, which gave rise to this case, occurred on a clear but moonless night in February 1970, when an automobile driven by the respondent, Garfield Beckward, collided with a vehicle driven by the petitioner, Russell William Hensel.[2] That collision occurred in Allegany County at the unilluminated intersection of Vocke Road, a four-lane divided highway running east and west, and Maryland Route 49, a two-lane highway running north and south with a stop sign which controlled the entry of traffic on Route 49 into its intersection with Vocke Road. The evidence also shows that when Beckward approached that intersection he came to a complete stop on Route 49, whereupon he, together with his wife who was beside him on the front seat, each looked twice, both to the east and to the west, for traffic proceeding on Vocke Road. Seeing no vehicular movement and therefore satisfied as to the apparent safety of moving out into the intersection, Beckward began to drive very slowly across the two eastbound lanes of Vocke Road toward the median, while both he and his wife continued to watch for traffic which might approach from their left. When the Beckwards were about half way across that side of the highway, the petitioner's car suddenly appeared in the illumination of their headlights. This second vehicle was about 20 to 25 feet away when first spotted by the Beckwards, and was proceeding, they say, at a fast rate of speed in an easterly direction with unlit headlights. The collision which followed caused Beckward to be catapulted from his automobile onto the road curb, and tragically resulted in his being hospitalized for six months, after which he returned to his home permanently paralyzed from the neck down.

After all the evidence was presented, Judge Getty, relying

---

2. Although respondent and petitioner are specified in the singular, the mentioned respondent is joined in this suit by his wife, Jean Etta Beckward, and the mentioned petitioner is joined by his father, Henry Charles Hensel.

principally on our decision in *Creaser v. Owens, supra,* directed a verdict, and we think quite correctly, in favor of Hensel on the ground that, under the "boulevard rule," Beckward as the unfavored driver, though he halted at the stop sign, was contributorily negligent as a matter of law in failing to yield the right-of-way to the Hensel vehicle traveling on the favored highway.

In *Creaser,* a school bus driver, traveling on an unfavored highway, properly stopped at the stop sign and looked for traffic proceeding on the favored highway before venturing into the intersection. Though her visibility beyond 200 feet to her left was obstructed by a hill and a curve in the "boulevard," the bus driver slowly "creeped out" into the intersection, only to be surprised by a speeding car which "jumped" over the hill and collided with the bus. While recognizing the possible harshness of the result, this Court held that because the bus driver failed to yield the right-of-way to the favored driver as required by the "boulevard" statute, the unfavored operator was guilty of contributory negligence as a matter of law. In so ruling we stated:

> "In order to make crystal clear our holding here, we emphasize that if an unfavored driver is involved in an accident with a favored vehicle under circumstances where the boulevard law is applicable then in a suit based on that collision the unfavored driver is deemed to be negligent as a matter of law. And, if the unfavored driver is a plaintiff, his suit is defeated unless the doctrine of last clear chance rescues his claim. Whereas, if the unfavored driver is a defendant he is liable except in the rare case when the issue of contributory negligence on the part of the favored driver is properly submitted to a jury, *i.e.,* whether he was guilty of negligence that was a proximate cause of the accident." (all citations omitted) 267 Md. at 245.

Despite the definitive nature of this and other statements in *Creaser* concerning the "boulevard rule," as to its precise requirements to both stop and yield, as well as to the

strictness of its application to vehicular traffic at designated intersecting highways, the Court of Special Appeals [3] reversed the judgment of the trial court, asserting that under the circumstances present here, the "boulevard rule" is inapplicable to accidents occurring at the intersections of through streets with stop streets. *Beckward v. Hensel*, 20 Md. App. 544, 316 A. 2d 309 (1974). In arriving at this determination the majority did not take issue with the *Creaser* decision that the "boulevard rule" must be rigorously followed "when it is applicable." But they in effect reason, relying principally on *Nicholson v. Page*, 255 Md. 659, 259 A. 2d 319 (1969),[4] that not all accidents occurring between favored and unfavored drivers at an intersection controlled by a stop sign are governed by the "boulevard rule," as "under certain circumstances [, such as those in this case,] the conduct of a favored driver could be such as to alter the relative rights and obligations of drivers at an intersection." 20 Md. App. at 553. Therefore, the Court of Special Appeals decided that the trial judge, in relying on the "boulevard rule" to direct the verdict in favor of the petitioner, erred when he ruled that as a matter of law Beckward was guilty of negligence which contributed to the happening of the accident. Instead, that court determined that the trial judge should have allowed the issue of the accident's proximate cause to be decided by the jury. In support of this conclusion it reasoned that Hensel, in traveling along Vocke Road into its intersection with Route 49, normally would have been entitled to all the perquisites possessed by a driver on a favored highway, but here, by making "it impossible for his presence on the highway to be anticipated by the unfavored driver," 20 Md. App. at 553, he had, by that action, altered the "relative rights" of the two motorists so as to permit recovery by Beckward.

---

**3.** There was an opinion filed by each member of the three-judge panel of that Court: Judge Davidson for the majority, Judge Powers concurring, and Chief Judge Orth dissenting.

**4.** The Court of Special Appeals also relied on its own prior decision of Riberkoff v. Fields, 15 Md. App. 288, 289 A. 2d 859 (1972). Since in that case no request for certiorari was addressed to this Court we were deprived of an opportunity to express our views as to the correctness of that holding.

We do not agree with this analysis espoused by the majority opinion for the Court of Special Appeals as we fail to perceive a basic legal distinction, permitting different results, between the facts of this case and those of *Creaser*. In each there existed a natural visibility hindrance to the unfavored driver (the black of the night in one and a hill and a curve in the road in the other) which was combined with an affirmative failure by both favored drivers to comply with the requirements of the motor vehicle statute (failure to turn on headlights in the present case compared with driving considerably in excess of the speed limit in *Creaser*). In explaining our decision it becomes unnecessary for us now to go back and review each of this Court's prior "boulevard rule" cases since that has been done by several of our recent opinions, particularly *Creaser*. Consequently, we only encapsulate here what those cases have elaborately said, and then supplement that so as to explicitly encompass the nuance presented by this case. Based on these precedents we hold the "boulevard" statute to be applicable here. This large group of previous cases makes clear that when the unfavored driver sues, the "boulevard rule" barring his recovery applies to an accident which occurs between an unfavored driver and the favored motorist on the "boulevard," either in the intersection or at a point, though technically outside the intersection, so close to it that the unfavored entering driver interferes with the favored driver's right-of-way into or through the intersection. *Grue et al. v. Collins*, 237 Md. 150, 157, 205 A. 2d 260 (1964), unless, under appropriate circumstances, the unfavored driver is rescued by the doctrine of last clear chance, *Greenfeld v. Hook*, 177 Md. 116, 8 A. 2d 888 (1939).

The only case which even arguably deviates from this considerable quantity of authority is *Nicholson v. Page*, *supra*. In that case the appellee-unfavored motorist halted in obedience to a stop sign, which controlled the intersection of two two-lane streets in Baltimore City, and noticed to his left a bus standing, with several vehicles stopped behind it, on the favored street at or near the intersection. Because the driver of that bus waved the appellee across, he emerged

from the stop street into the intersection only to be struck by an automobile which, after having come to a stop behind the bus, suddenly moved into the lane provided for traffic going in the opposite direction, passed the bus into the intersection, and then turned left, intending to proceed on the unfavored street. This case is of no assistance to the petitioner here because it involved an affirmative relinquishment of the statutory right-of-way by the first in line of several vehicles stopped on the favored street, combined with the illegal entry into the intersection of another automobile which was not traversing the intersection but turning left. Furthermore, since as we said in *Creaser*, "nothing in that [*Nicholson*] decision was intended as a departure from the prior boulevard cases of this Court," 267 Md. at 247, it is doubtful that *Nicholson* has any precedential value except possibly in a case involving a substantial duplication of its peculiar facts.

Therefore, since the "boulevard rule," developed over the years, and whose meaning is explained in *Creaser* and similar cases, applies to the facts present here so as to prohibit recovery by the respondent as a matter of law, the judgment of the Court of Special Appeals will have to be reversed, as, "if the meaning and application of the 'boulevard rule' is to be changed, it must be done by the Legislature not by judicial fiat." *Creaser v. Owens*, 267 Md. at 249.

> *Judgment of the Court of Special Appeals reversed and case remanded to that court with the instruction that it affirm the judgment of the Circuit Court for Allegany County.*
>
> *Costs to be paid by the respondent.*

*Smith, J., dissenting:*

I would affirm. I sat in *Creaser v. Owens*, 267 Md. 238, 297 A. 2d 235 (1972), and I am still of the opinion that it was

correctly decided. To my mind, the essence of the reasoning behind the boulevard rule was stated by Judge Offutt for the Court in *Greenfeld v. Hook,* 177 Md. 116, 8 A. 2d 888 (1939), when he said:

> " [T]he safety of the travelling public demands that the rules defining the relative rights of travellers on through highways and on highways intersecting them be clear, unmistakable, and definite. If the duty of stopping and of yielding right of way is positive and inflexible, the inhibited traveller may know that he violates it at his risk, while the traveller on the favored highway may know that he may safely exercise the privilege of uninterrupted travel thereon, which the statute gives. *If,* however, *the relative rights of travellers on the two types of highway are held to depend upon nice calculations of speed, time, and distance, the rule would encourage recklessness and the privilege of uninterrupted travel would mean little more than the privilege of having a jury guess in the event of a collision whose guess was wrong.* If the traveller on a stop street were required to slow down and bring his car into control at every intersection there would be no perceptible difference between such a street and any other street on which traffic is controlled by the general rules of the road." *Id.* at 126. (Emphasis added.)

To have decided *Creaser* otherwise would have involved "nice calculations of speed, time, and distance." On that score Judge Hammond for the Court in *Harper v. Higgs,* 225 Md. 24, 169 A. 2d 661 (1961), echoed *Greenfeld* when he said:

> "The relative rights of travellers on the two intersecting roads are not to be held to depend on nice calculations of speed, time and distance lest the obvious and essential purposes of the boulevard rule to accelerate the flow of traffic over the through highway at the permitted speed, without interruption, be frustrated. The favored driver has

a right to assume the unfavored driver will stop and yield the right of passage and therefore, in most instances, even though the favored driver does not see the unfavored car he will not be guilty of negligence proximately causing the accident for, if he had seen it he could, unless put on notice to the contrary, have assumed it would stop." *Id.* at 31.

This is a different case. If the testimony of the unfavored driver is believed here, then there was no way he could see the approach of the favored vehicle since there was no moonlight or other illumination. I have done some walking at night in unilluminated areas when there was no moonlight. I assure my brethren of the majority that in such circumstances the oncoming favored vehicle just could not be seen by the unfavored driver prior to his entering the boulevard. This case then, unlike *Creaser* and similar boulevard cases, involves no nice calculation of time, speed, and distance. I think the jury should have been permitted to determine whether the favored driver concealed evidence of his presence on the highway by travelling without lights. If he did, then I am unable to comprehend how the unfavored driver could be guilty of negligence by entering a boulevard in an unilluminated area on a moonless night. The peculiar facts of this case should make it an exception to the boulevard rule.

Judge Levine authorizes me to say that he concurs in the views here expressed.