594 A.2d 1177

**Matthew Lynn BRIGHT**

v.

**Ida Patricia MYERS.**

**No. 1576, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Sept. 5, 1991.

Conrad W. Varner (Danny B. O'Connor, Earl W. Bartgis, Jr. and Miles & Stockbridge, on the brief), Frederick, for appellant.

John H. McDowell (McDowell & Myers, P.A., on the brief), Hagerstown, for appellee.

Argued before ALPERT, BLOOM and MOTZ, JJ.

ALPERT, Judge.

This is an appeal from an automobile negligence action that was filed against the appellant, Matthew Lynn Bright, by appellee, Ida Patricia Myers, on September 14, 1989, seeking damages stemming from the automobile accident occurring on May 5, 1987. The case was tried before a jury on April 30 and May 1, 1990, in the Circuit Court for Washington County. At the close of all the evidence, the trial court directed a verdict in favor of appellee on the

issue of liability. Subsequently, the jury returned a verdict awarding thirty thousand dollars ($30,000.00) to appellee. Appellant asks us to consider whether:

I. Under Maryland law, the trial court erred in directing a verdict in favor of appellee on the basis of the boulevard rule, in light of facts and reasonable inferences therefrom which would indicate that the appellee was proceeding unlawfully or was inattentive at the time of the incident.

II. Under Maryland law, the trial court abused its discretion in denying appellant's pre-trial discovery motions and in permitting prejudicial evidence to go before the jury when that evidence was not made available to the appellant prior to the trial, despite appellant's efforts to obtain that information in the discovery process.

## FACTS AND PROCEEDINGS

The automobile collision giving rise to this suit took place at approximately 3:45 p.m. on May 5, 1987, in Hagerstown, Washington County, Maryland. Myers was driving south on Pennsylvania Avenue (U.S. Route 11), a highway; Bright was driving in the northbound lane of Pennsylvania Avenue.[1] Bright stopped to make a left turn into the parking lot of a Burger King restaurant. An unidentified driver in the inner southbound lane stopped and motioned Bright to proceed with the left turn. As Bright made the turn, he collided with Myers's vehicle.

Myers testified at the trial that she saw Bright's vehicle crossing into her lane "[m]aybe a split second" before the accident. She "stood up on [her] brakes," i.e., "[p]ressed on them as hard as [she] could," in her attempt to avoid the collision, but was unsuccessful. Myers stated that she was unsure how fast she had been driving; she estimated that it was "[s]omewheres around thirty, thirty-five mile an hour." On cross-examination, she reiterated that she was traveling

---

1. At the site of the accident, Pennsylvania Avenue is three lanes wide, with two lanes running southbound and one running northbound.

"[s]omewheres between thirty and forty" miles an hour. She believed that the speed limit at the location of the accident was thirty or thirty-five miles an hour. Myers acknowledged that nothing had obstructed her view of Bright's vehicle. Nonetheless, its sudden imposition into her lane of travel precluded her from avoiding the accident.

Myers further testified that at the time of the accident, she was taking medications for prior injuries that she had sustained. Specifically, she was having back problems, for which her physician, Dr. Allen Ditto, had prescribed Naprosyn and Norflex. Although she had taken the medications that morning, she denied feeling any effects therefrom that afternoon.

According to Myers, her head, neck, shoulders, back, and knees hurt after the accident. An ambulance transported her from the scene of the accident to Washington County Hospital for an emergency room visit. The following day, she visited Ditto and began a long course of treatment for her injuries. Ditto testified that he determined "that she was suffering from post-traumatic headache syndrome, whiplash injury to the neck and low back pain due to the auto accident." This testimony was contradicted by Bright's medical expert, Dr. Howard Moses, who determined that "Ms. Myers did not have any objective evidence of any neurological injury as a result of her accident."

Because Myers continued to experience recurring, severe headaches, Ditto referred her to Dr. Mehrullah Khan, a neurologist. During this period, Myers was also seen by neurologists at the Johns Hopkins Hospital Neurology Clinic. Myers took numerous prescribed medications during her treatment such as Tegretol and Amitriptyline. Although these medications caused unpleasant side effects, they were deemed necessary to control her severe head pain. Khan testified in his videotaped *de bene esse* deposition, which was admitted at trial, that Myers had sustained permanent head injuries. He noted that "I don't see any-

thing in the near future that we will be able to stop her medication and so her symptoms will disappear."

Further testimony established that Myers missed time from her full-time employment, lost her part-time job, and suffered a decrease in her job performance because of the injuries that she suffered from the accident.

At the close of all the evidence, appellee's counsel moved for a directed verdict (motion for judgment) on the issue of liability. Counsel argued that there was "clear evidence that Mr. Bright did take away the right of way of M's [sic] Myers in violation of the boulevard rules." Relying on the boulevard rule, the court granted the motion, finding as a matter of law that Bright had been negligent because he failed in his duty to yield the right-of-way to Myers. The court further found that no evidence had been produced from which "any reasonable jury could find [that there] was any negligent act by [Myers] which contributed to the cause of the collision." The jury then awarded Myers thirty thousand dollars ($30,000.00).

## THE LAW

### I.

Appellant contends that it was reversible error for the trial court to rule, based on Maryland's boulevard law, that appellee was entitled to a directed verdict on the issue of liability. Appellant reasons that the facts and the reasonable inferences that could be drawn therefrom indicated that appellee was not proceeding lawfully and was inattentive at the time of the collision, thus precluding the directed verdict. We agree that the trial court's reliance on the boulevard rule was misplaced. We explain.

The Maryland boulevard rule has evolved from judicial construction of statutory requirements [2] relevant to yielding

---

2. For the current codification of these requirements, see Md.Transp. Code Ann. §§ 21–403 to –404.1 (1987).

the right-of-way in various situations. *See Tippett v. Quade*, 19 Md.App. 49, 58, 309 A.2d 481 (1973). The rule's objective is to expedite the flow of boulevard traffic by allowing boulevard drivers to travel without decelerating at every intersection. *See Dean v. Redmiles*, 280 Md. 137, 147, 374 A.2d 329 (1977); *Greenfeld v. Hook*, 177 Md. 116, 125, 8 A.2d 888 (1939).

Under the original formulation of the rule, a driver approaching a "through highway"[3] from an unfavored road was obligated to stop and yield the right-of-way to drivers already in or about to enter the intersection during the time that the unfavored driver was attempting to enter the boulevard. *See Creaser v. Owens*, 267 Md. 238, 239–40, 297 A.2d 235 (1972). "This duty continue[d] as long as he [was] in the intersection and until he bec[a]me[ ] a part of the flow of favored travellers or successfully traverse[d] the boulevard." *Id.* at 240, 297 A.2d 235. The unfavored driver's duty to stop and yield the right-of-way was judicially regarded as "mandatory, positive, and inflexible." *Dean*, 280 Md. at 147, 374 A.2d 329. Accordingly, "[w]here suit [was] brought by the favored driver against the unfavored driver, the unfavored driver [was] negligent as a matter of law." *Kopitzki v. Boyd*, 277 Md. 491, 495, 355 A.2d 471 (1976); *see also Creaser*, 267 Md. at 243–44, 297 A.2d 235. In this scenario, the unfavored driver avoided liability only in the infrequent case in which he could "convince the jury that the favored driver's negligence was a proximate cause of the accident," *i.e.*, that the favored driver was contributorily negligent. *Kopitzki*, 277 Md. at 495, 355 A.2d 471.

---

**3.** Statutorily defined,
'[t]hrough highway' means a highway or part of a highway:
(1) On which vehicular traffic is given the right-of-way; and
(2) At the entrances to which vehicular traffic from intersecting highways is required by law to yield the right-of-way to vehicles on that highway or part of a highway, in obedience to either a stop sign or yield sign placed as provided in the Maryland Vehicle Law.
Md.Transp.Code Ann. § 21–101(u) (1987) (formerly codified in substantial part as Md.Code Ann. art. 66½, § 1–198 (1970)).

Maryland courts thus adhered to a rigid application [4] of the boulevard rule until 1977, when the Court of Appeals decided *Covington v. Gernert,* 280 Md. 322, 373 A.2d 624 (1977), which abrogated the absolute right-of-way. In *Covington,* the Court reevaluated the boulevard rule in light of the changes that had been made to the statutory definition of "right-of-way." *Id.* 280 Md. at 323–25, 373 A.2d 624. Before the motor vehicle law was revised in 1970, *see* Act of 1970, ch. 534, 1970 Md. Laws 1308, the definition of "right-of-way" had been "[t]he privilege of the immediate use of the highway." Md.Ann.Code art. 66½, § 2(a)(45) (1957). Under the new definition, *see* Md.Transp.Code Ann. § 21–101(r) (1987),[5]

'[r]ight-of-way' means the right of one vehicle or pedestrian to *proceed in a lawful manner* on a highway in preference to another vehicle or pedestrian.

*Id.* (emphasis added). Based on the statutory change, the Court concluded that the boulevard rule is inapplicable where the favored driver had not been " 'proceed[ing] in a lawful manner,' " *See Covington,* 280 Md. at 325, 373 A.2d 624, because the favored driver then is "not entitled to preference over that of" the unfavored driver. *Id.*

■ Pursuant to *Covington,* "[f]irm as we thought it was, the Rock of Gibraltar [which the boulevard rule was] has now crumbled into the sea." *Gazvoda v. McCaslin,* 36 Md.App. 604, 611, 375 A.2d 570 (1977). The current boulevard rule provides that "a driver who enters a through highway at an intersection controlled by a stop sign (unfavored driver) must stop and yield the right of way to all drivers of vehicles proceeding in a lawful manner on the through highway (favored drivers)." *Dail v. Tri–City*

---

4. As the Court of Appeals stated in *Hensel v. Beckward,* 273 Md. 426, 330 A.2d 196 (1974): "Like the Rock of Gibraltar we remain firm and will not allow the legislative mandates contained in this right-of-way statute to be judicially either bypassed or otherwise eroded through new waves of attack." *Id.* at 427, 330 A.2d 196.

5. This previously was codified as Md.Code Ann. art. 66½, § 1–175 (1970).

*Trucking Co.*, 39 Md.App. 430, 432, 387 A.2d 293 (1978). "If the unfavored driver fails to yield the right of way, and an accident results, the unfavored driver is contributorily negligent as a matter of law." *Id.* The absolute right-of-way previously accorded the favored driver is retained only if he was proceeding lawfully. *See Gazvoda,* 36 Md.App. at 612, 375 A.2d 570.

Appellant therefore relies on *Covington* to argue that the boulevard rule was incorrectly applied because the lower court did not consider whether appellee was proceeding lawfully. It is appellant's contention that had the court addressed the issue of whether appellee was proceeding lawfully, the evidence relating thereto would have precluded the court from directing a verdict based on the boulevard rule.

■ We need not reach the merit of appellant's argument because we determine at the outset that this case was not one to which boulevard law should have been applied. In making his left turn off Pennsylvania Avenue into the Burger King parking lot, appellant was not *entering* the boulevard, he was *exiting* it by way of a left turn. Maryland courts repeatedly have held that "boulevard law is not applicable to a vehicle making its exit from the boulevard." *Dean,* 280 Md. at 149, 374 A.2d 329; *see also Tates v. Toney,* 231 Md. 9, 13, 188 A.2d 283 (1963) (held that it was error to grant a directed verdict based on boulevard law where collision was caused by vehicle leaving the boulevard); *Safeway Trails, Inc. v. Smith,* 222 Md. 206, 212, 159 A.2d 823 (1960) (boulevard law held inapplicable where a tractor-trailer was not entering a through highway, but was exiting one); *Freudenberger v. Copeland,* 15 Md.App. 169, 173, 289 A.2d 604 (1972) (directed verdict on grounds of boulevard rule properly denied where case involved "a turn off a boulevard"); Webb, *Bothersome Boulevards,* 26 Md. L.Rev. 111, 112 (1966) ("The rule also does not apply to a turn off a boulevard,[ ] even though such a turn may be a left turn across oncoming traffic at an intersection...").

■ Because this was a non-boulevard case involving a left turn, the trial court properly should have applied the "left-turn" provision of the Motor Vehicle Law, section 21–402(a), which provides that:

If the driver of a vehicle intends to turn to the left in an intersection or into an alley or a private road or driveway, the driver shall yield the right-of-way to any other vehicle that is approaching from the opposite direction and is in the intersection or so near to it as to be an immediate danger.

Md.Transp.Code Ann. § 21–402(a) (1987).[6] Instead, the trial court incorrectly stated that appellee had "the right to assume that no one is going to take the right of way from her." No such absolute right-of-way, as is found under the boulevard rule, exists pursuant to section 21–402. Whereas a directed verdict is appropriate in boulevard law cases where the favored driver was proceeding lawfully because of the automatic finding of negligence as a matter of law, *see, e.g., Dail,* 39 Md.App. at 432, 387 A.2d 293, the language of section 21–402 indicates that it is incumbent upon the trier of fact to determine whether the car "approaching from the opposite direction" was or was not so near so as to constitute "an immediate danger." As the Court of Appeals stated in *Meldrum v. Kellam Distributing Co.,* 211 Md. 504, 128 A.2d 400 (1957):

---

6. In *Tippett v. Quade,* 19 Md.App. 49, 309 A.2d 481 (1973), we described the boulevard rule as "legal shorthand for the judicial construction afforded the several requirements imposed upon drivers entering or crossing through highways, as these are set out in Article 66–½, §§ 11–401, 402, 403 and 404 of the Code [the current §§ 21–401, 402, 403, and 404 of the Motor Vehicle Law]." *Id.* at 58, 309 A.2d 481. Insofar as this opinion differs from our holding in *Tippett,* we overrule that holding. "The judicial characterization of sections 11–401 and 11–402 as falling within the ambit of the boulevard rule is misleading, however, because in cases involving those sections, no automatic finding of negligence is imposed by the court." Comment, *The Maryland Boulevard Rule: A Time for Change,* 6 U.Balt.L.Rev. 223, 224 n. 18 (1977) (citing *Nardone v. Underwood,* 219 Md. 326, 149 A.2d 13 (1959); *Meldrum v. Kellam Distributing Co.,* 211 Md. 504, 128 A.2d 400 (1957)).

Where the nature and attributes of an act relied upon to show negligence contributing to an injury sustained can only be determined correctly by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it, and it is not for the court to determine its quality as a matter of law.

*Id.* at 511, 128 A.2d 400 (applying section 21–402(a)). In this case, the jury must determine whether Myers' car was near enough to create "an immediate danger" of which Bright should have been aware. Additionally, the jury must consider whether Myers acted in a contributorily negligent manner, *i.e.*, whether the speed at which she was travelling was excessive.

In light of the foregoing, we hold that a directed verdict was erroneous and remand to the trial court for a new trial.

## II.

Appellant next contends that the trial court abused its discretion in ruling on pre-trial motions and discovery disputes. The crux of appellant's argument is that appellee failed to produce a Magnetic Resonance Imaging (MRI) scan and diagnosis that established objective evidence of injury; thus, appellant was precluded from examining or rebutting the evidence. In response, appellee argues that the report of the scan was included in her Supplemental Response to Request for Production of Documents that was received by appellant's counsel on April 20, 1990.[7] The actual scan was not forwarded to the appellant because it was unavailable to the appellee.

In light of our decision to remand, we deem it unnecessary to determine whether the trial court's ruling regarding the MRI scan constituted an abuse of discretion. The lapse of a year's time since the trial should have cured any

---

7. As indicated in the record, the scan was performed on April 10, 1990, and the report thereof was dated April 11, 1990.

problems regarding the availability of the MRI scan. Even if the actual scan remains unavailable, appellant will have adequate time to prepare his case using the report of the scan. Because he received the report of the scan only ten days before the trial began, it may have been difficult for appellant to incorporate the new evidence. This difficulty, we presume, will not exist for appellant in preparing for his case on remand.

JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR WASHINGTON COUNTY FOR A NEW TRIAL; COSTS TO BE PAID BY APPELLEE.