622 A.2d 797

**Karen DENNARD**

v.

**Douglas M. GREEN, et al.**

**No. 1147, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

April 6, 1993.

David M. Kopstein (Dross & Levenstein, Washington, D.C., Irving Dross and Dross & Levenstein, Waldorf, on the brief), for appellant.

William N. Zifchak (Sasscer, Clagett & Bucher, on the brief, for appellee, Green), Upper Marlboro.

James J. Lombardi (Lombardi, Powers & Amster, on the brief, for appellee, Procopio), Upper Marlboro.

Argued before ALPERT, ROSALYN B. BELL and FISCHER, JJ.

ALPERT, Judge.

This is an appeal from an automobile negligence action filed against two appellees, Douglas M. Green and Hugo A. Procopio, Jr., by appellant, Karen Dennard, on January 23, 1990, seeking damages arising from an automobile accident occurring on July 14, 1988. The case was tried before a Prince George's County jury on April 8–10, 1992 on the issue of liability only.[1] At the close of all the testimony, Dennard moved for a directed verdict against both Green and Procopio, which motions were denied. The jury then returned a verdict in favor of both Green and Procopio. On May 18, 1992, Dennard's subsequent motion for Judgment Notwithstanding the Verdict (JNOV) was denied without explanation. Dennard then noted a timely appeal asking us to resolve whether:

> UNDER MARYLAND'S BOULEVARD RULE, THE DRIVER OF AN UNFAVORED VEHICLE WHO FAILS TO YIELD THE RIGHT–OF–WAY WHILE ATTEMPTING TO CROSS A FAVORED HIGHWAY MAY AVOID LIABILITY TO HIS PASSENGER WITHOUT SHOWING THAT THE DRIVER OF THE FAVORED VEHICLE WAS NEGLIGENT.

We would answer the above in the affirmative. That would not, of course, aid Dennard in her argument that at least one of the two defendant/appellees in this case was negligent. In her rendition of the statutory preference known as the Boulevard Rule, Dennard has failed to include a significant statutorily-added phrase which, as we will explain, significantly alters the application of said Rule to her detriment. Accordingly, we affirm.

---

1. Prior to the trial on the issue of liability, the parties had reached a stipulation regarding damages.

## Background

The automobile accident giving rise to this suit occurred on July 14, 1988, at the four-way intersection of Rhode Island Avenue and Howard Road, in a residential area of Hyattsville, Maryland. Rhode Island Avenue, at the place of the collision, is a two-way favored road with a speed limit of twenty-five miles per hour; Howard Road is an unfavored route with a stop sign where it meets Rhode Island Avenue. Dennard, a passenger in a vehicle driven by Green, was severely injured when Green, while attempting to cross the intersection, struck another vehicle, driven by Procopio.

The only witnesses that testified at trial were the three parties themselves. Regarding the circumstances surrounding the accident, Dennard testified as to the following: Green, who was travelling westbound on Howard Road and intended to cross over Rhode Island, came to a stop at the stop sign at the intersection. Dennard, sitting in the right front seat of Green's car, looked to the right (as far down Rhode Island as she could see) and saw no cars coming. Green then proceeded halfway across the intersection, where he again came to a stop. Dennard indicated that she first observed Procopio's vehicle (travelling southbound) as a "red flash" out of her right eye and only when it was about a car length away, just before the collision. Dennard further testified that during the momentary "red flash" she determined that Procopio was speeding.

Portions of Green's depositions were entered at trial, and they did not significantly contradict Dennard's testimony. Green indicated that he indeed stopped upon arriving at the stop sign at the intersection and, after looking left and encountering hedges that blocked his view, edged out two feet into the intersection to gain a clearer view. He did not look right during this "first" stop at the intersection. Once out into the intersection, Green then stopped again, looked left, then right, then left again, and started to look right again as he slowly proceeded through the intersection. Green testified that at the point of his "second" stop (while

sitting out in the intersection) he could see about 80 yards while looking left and that there were no hills or other obstructions blocking his view. In looking right up Rhode Island Avenue, Green stated that he had a clear view there as well. It was as he started to look right for the second time that Green first observed Procopio's car which, from his vantage point, was about twenty yards away.[2] Green's next move, just before impact, was to turn to the left and attempt to stop in order to allow Procopio's car room to maneuver around him to the right.

During his testimony at trial Green added two pieces of information that were not in his deposition. He testified that Procopio was going "anywhere between 45 and 50 miles per hour" before impact (in a 25 miles per hour zone) and that approximately five to eight seconds elapsed between the time of his second stop in the intersection and the point of collision.

Procopio's testimony came in the form of both his deposition transcript and live testimony. His deposition testimony indicated that the weather was partly cloudy and that he was travelling twenty-five miles per hour, in accordance with the posted speed limit, as he approached the intersection of Rhode Island Avenue and Howard Road. Procopio also indicated that he did not see Green's vehicle until it was "three feet from [his] door." During his live testimony, Procopio added that "Rhode Island Avenue in the vicinity of the accident was a flat, straight two-way road separated by a double yellow line," and that on the day of the accident the weather was clear and sunny. In addition, he reiterated that he had not seen Green's vehicle until it was three feet from his door.

At the close of all of the evidence, Dennard moved for judgment against both Green and Procopio. Both motions were denied. Judge Martin then instructed the jury regard-

---

2. When Green first saw Procopio's red car, Green's car was just across the middle of Rhode Island avenue.

ing the applicable law which they were to apply to their determination of the relevant factual issues. The jury returned a verdict in favor of both Green and Procopio. Dennard subsequently filed a timely Motion for JNOV or, in the alternative, a new trial, which was denied.

Dennard argues on appeal, based on Maryland's "Boulevard rule," that "the driver of an unfavored vehicle [appellee Green] who fails to yield the right-of-way while attempting to cross a favored highway may not avoid liability to his passenger [Dennard] without a showing that the driver of the favored vehicle [appellee Procopio] was negligent." In other words, Dennard contends that under the statutory preference of the Boulevard rule, *at least one of the two appellees in this case must be negligent as a matter of law.* (Emphasis added.) This was indeed the substance of Dennard's Motion for JNOV:

> Although it is true that the mere happening of an accident does not prove negligence, the evidence in this case excluded the possibility of a collision between these two vehicles without at least one driver having been negligent. There are no facts that could support finding of unavoidable accident, act of God, justified emergency or any of the other legally recognized circumstances in which a collision between two vehicles could occur without negligence. If the jury believed the version of Defendant Green as to the excessive speed of Defendant Procopio, then it would have to find Defendant Procopio negligent. If the jury believed the version of Defendant Procopio that he was proceeding at posted speed limit, then it would have to find, pursuant to the Boulevard Law instruction of the Court, that Defendant Green failed to yield the right-of-way, rendering him negligent.

Consequently, we are presented with the relatively simple issue of whether the trial judge acted properly in submitting the issue of the appellees' negligence to the jury or, conversely, whether, under the Boulevard Rule, one or both

of the appellees are negligent as a matter of law.[3] First, however, as a threshold matter, we must determine whether the Boulevard Rule is indeed applicable to the facts and circumstances of the instant case.

## I.

■ It is well-settled that there are two physical conditions precedent to the application of the Boulevard Rule. *Oddis v. Greene,* 11 Md.App. 153, 273 A.2d 232 (1971). An intersection of a favored highway and an unfavored intersecting street, at which unfavored street traffic was required to (1) stop by some form of traffic control device and (2) yield the right-of-way to traffic approaching on the favored highway, is the first of the two necessary physical factors. A collision[4] that occurred as a direct consequence of the entrance of the unfavored vehicle onto the favored highway in disregard of its obligation to yield, is the second. *Id.* at 157, 273 A.2d 232.

■ Upon our review of the evidence contained in the record below, we agree with Dennard that the facts and circumstances of the instant case present perhaps the most classic application of Maryland's "Boulevard Rule."

## II.

Having determined that the Boulevard Rule is indeed applicable to the case at bar, we now turn to a discussion of

---

**3.** Although Dennard does not present this issue expressly, her brief, taken as a whole, implies that the trial court committed reversible error in failing to either direct a verdict in her favor and/or grant her motion for JNOV as to the liability of *at least one* of the appellees.

**4.** We note that in at least one case decided by the Court of Appeals, a collision was *not* a condition precedent to the application of the boulevard rule. In *Dunhill v. Bloomberg,* 228 Md. 230, 235, 179 A.2d 371 (1962), the unfavored driver's encroachment on the favored highway caused the favored driver to be confronted with an emergency situation requiring him to swerve into a curb, injuring himself and damaging his vehicle. Despite the absence of a direct collision between the two drivers, the Court applied the boulevard rule in directing a verdict for the favored driver. *Id.* at 236, 179 A.2d 371.

the origination and development of this well-known statutory preference.

The Boulevard Rule has evolved from the judicial construction of certain statutory requirements that are relevant to granting the right-of-way in various traffic situations. *Bright v. Myers*, 88 Md.App. 296, 300–01, 594 A.2d 1177 (1991), *reversed on other grounds*, 327 Md. 395, 609 A.2d 1182 (1992). *See also Tippett v. Quade*, 19 Md.App. 49, 58, 309 A.2d 481 (1973). The statutory requirement is currently codified in Md.Transp.Code Ann. (hereinafter "TR") § 21–403 (1992); *Bright*, 88 Md.App. at 304 n. 6, 594 A.2d 1177. The specific subsection applicable to the facts *sub judice* is TR § 21–403(c) *Vehicle entering stop or yield intersection or through highway;* which provides as follows:

(c) Stopping in obedience to stop signs.—

If a stop sign is placed at the entrance to an intersecting highway, even if the intersecting highway is not part of a through highway, the driver of a vehicle approaching the intersecting highway shall:

(1) Stop in obedience to the stop sign; and

(2) Yield the right-of-way to any other vehicles approaching on the intersecting highway.

*Id.*

 There is a long line of cases that have dealt with the intricacies concerning the appropriate application of the Boulevard Rule. Its essential purpose, however, has remained unchanged. It is to give preference to drivers on highways when they encounter other drivers attempting to enter or cross through highways, *Myers v. Bright*, 327 Md. 395, 398 n. 1, 609 A.2d 1182 (1992), *reversing on other grounds, Bright v. Myers, supra,* and to protect both the favored and unfavored drivers [and passengers] of motor vehicles lawfully entering an intersection. *Cooper v. Allen*, 243 Md. 9, 219 A.2d 920 (1966). This purpose is sufficiently accomplished if "uninterrupted travel is encouraged by protecting the favored driver's right-of-way and recklessness is

discouraged by penalizing the unfavored driver for failure to yield the right-of-way." [5] *Dail v. Tri–City Trucking Co.,* 39 Md.App. 430, 387 A.2d 293 *cert. denied,* 283 Md. 741 (1978).

It is commonly regarded that the Boulevard Rule was originally espoused in *Greenfeld v. Hook,* 177 Md. 116, 8 A.2d 888 (1939), where the Court of Appeals said:

> [I]t is the positive and imperative duty of a person driving an automobile over an unfavored highway, when he approaches an intersecting highway lawfully designated as a "boulevard" or "stop street," to stop before entering the intersection, and having stopped, to exercise reasonable care and diligence to discover whether traffic thereon is approaching the intersection, and, having entered the intersection, to yield the right of way to such traffic, by permitting it to proceed without interruption, and that that duty persists throughout his passage across the favored way.

*Id.* at 132, 8 A.2d 888.

In *Dean v. Redmiles,* 280 Md. 137, 374 A.2d 329 (1977), the Court of Appeals "reviewed its prior holdings relative to the Boulevard Rule," *id.* at 143, 374 A.2d 329 and characterized the variety of cases reaching [it] arising under [that] Rule [as generally] fall[ing] into eight categories:

> [ (1) ] the suit of the favored driver against the unfavored driver, [ (2) ] the unfavored driver against the favored driver, [ (3) ] the passenger of an unfavored driver against the favored driver, [ (4) ] the passenger of an unfavored driver against both drivers, [ (5) ] the passenger of the favored driver against both drivers, [ (6) ] the passenger of the favored driver against the unfavored driver, [ (7) ] the passenger of the favored driver against the favored driver, and, finally, [ (8) ] counterclaims so

---

**5.** "Right-of-way" is currently statutorily defined in TR § 21–101(r) as "the right of one vehicle or pedestrian to proceed in a lawful manner on a highway in preference to another vehicle or pedestrian."

that the favored and unfavored drivers are suing each other.

*Id.* at 144, 374 A.2d 329. After discussing various cases representative of each of the eight classifications, the court acknowledged that the majority of litigation involved suits between favored and unfavored drivers. *Id.* at 147, 374 A.2d 329. It is self-evident, however, that the case *sub judice* falls squarely into one of the more uncommon categories characterized above in *Redmiles*—namely, the passenger of an unfavored driver against both drivers.

Since the decision in *Greenfeld,* and up until 1977, the duty of an unfavored driver to stop and yield the right-of-way was mandatory, positive, and inflexible. *Creaser v. Owens,* 267 Md. 238, 246, 297 A.2d 235 (1972). Even in cases where we might have been persuaded that the facts of a given case failed to warrant the application of the Boulevard Rule because of the blatant primary negligence of the favored driver, we fell prey to the seemingly indestructible precedent afforded the Rule. *See e.g., Johnson v. Dortch,* 27 Md.App. 605, 342 A.2d 326 *cert. denied,* 276 Md. 745 (1975) (judgment entered upon a directed verdict for the favored driver in a suit by the unfavored driver affirmed, despite the presence of sufficient evidence to indicate that the favored driver was guilty of four separate, serious traffic violations). Indeed, as the Court of Appeals stated in *Hensel v. Beckward,* 273 Md. 426, 330 A.2d 196 (1974):

Like the Rock of Gibraltar we remain firm and will not allow the legislative mandates contained in this right-of-way statute to be judicially either bypassed or otherwise eroded through new waves of attack.

*Id.* at 427, 330 A.2d 196.

The unqualified status of the Boulevard Rule as applied to unfavored vehicles entering upon through highways was emphasized by the Court of Appeals in 1972 in *Creaser v. Owens, supra,* where the Court sought to dispel the belief that there are exceptions not already recognized in the case law. The Court further noted that of the many decisions which have interpreted the Boulevard Rule, none has recog-

nized an exception to the premise that the unfavored driver is negligent as a matter of law. *Id.* 267 Md. at 248 n. 6, 297 A.2d 235.

In 1977, however, in two cases decided just a month after *Redmiles, supra,* the two Maryland appellate courts conveyed signs that the once seemingly expanding scope of the Boulevard Rule was beginning to show signs of contraction. In *Covington v. Gernert,* 280 Md. 322, 373 A.2d 624 (1977), a driver travelling the wrong way on a one-way favored street was denied the protection of the Boulevard Rule. The Court noted that the Rule requires an unfavored vehicle approaching a stop sign at an intersection to fully stop and yield the right of way to vehicles proceeding on the favored route. *Id.* at 323, 373 A.2d 624. The Court also noted, however, that a revision of Maryland's motor vehicle law in 1970 warranted a departure from the standard Boulevard Rule application.[6] *Id.*

It was not the statutory section upon which the Boulevard preference was based (presently codified as TR § 21–403 and codified as Md.Ann.Code art. 66½, § 11–403(b) at the time *Covington* was decided), however, that was revised, but rather, the statutory definition of the term "right-of-way" contained therein. That term was redefined in 1970 (by Chapter 534 of the Acts of 1970), and is presently codified as TR § 21–101(r) as "the right of one vehicle [or pedestrian] to proceed in a *lawful manner* on a highway in preference to another vehicle [or pedestrian]." *Covington,* 280 Md. at 323, 373 A.2d 624. (emphasis in original). This definition stood in marked contrast to the one that existed prior to the 1970 revision and upon which all of the cases imposing absolute liability on the part of the unfavored driver rested (*i.e.,* "[t]he privilege of the immedi-

6. The Court in *Covington* noted that this was the first case to reach it regarding an accident occurring subsequent to the effective date of the revised motor vehicle law (*i.e.,* 1970) where the revamped definition of "right of way" compelled a different result.

ate use of the highway"—then codified as Md.Ann.Code art. 66½, § 2(a)(45)). *Covington,* 280 Md. at 323, 373 A.2d 624.

The Court in *Covington* noted that it was obvious that when Gernert was driving the wrong way on a one-way street, he was not "proceeding in a lawful manner." Therefore, the Court held, he was not entitled to the Boulevard Rule preference over Covington. *Id.* at 325, 373 A.2d 624.

*Gazvoda v. McCaslin,* 36 Md.App. 604, 375 A.2d 570 (1977), a case decided just over a month after *Covington,* again involved the application of the Boulevard Rule, but to a slightly different factual scenario. There, an eleven year-old boy on a bicycle (statutorily treated as a vehicle) entered into an intersection and collided with a truck driving on the favored route. In following the teachings of *Covington* and reversing a judgment entered summarily by the lower court for the favored driver, we noted the following (which we find particularly applicable to the case *sub judice*):

The message of *Covington v. Gernert* is clear. The departure from the past arises when the favored driver is not proceeding in a lawful manner. Then the boulevard rule no longer applies, and the favored driver is not entitled to preference over the unfavored driver.

This means that in a case arising from a vehicle collision which happens when one driver enters a through highway, if there is evidence sufficient to permit a finding of fact that the favored driver was proceeding in a manner that was *not* lawful, then it is for the jury to determine whether the favored driver has lost his statutory preference. As the Court of Appeals said in Covington, "[the trial court] will not be permitted to regard [the entering driver] as having violated the boulevard rule."

At the risk of justifiable criticism for indulging in the vice of self-quotation, this writer repeats what he said in a concurring opinion in this Court's *Beckward v. Hensel,* 20 Md.App. [544] at 560 [316 A.2d 309 (1974)]:

'When the boulevard rule is applicable, it is virtually absolute, but, accepting the efficacy of that view, we still may not hold it applicable to every collision that

happens in the intersection of a favored and an unfavored highway. The key is proximate cause. If the harm was proximately caused by breach of the duty imposed by the boulevard rule, then the rule must be strictly applied. But if the proximate cause was the breach, by either party, of some other duty, then the boulevard rule is not applicable.'

What *Covington v. Gernert, supra,* does, and what we think justice demands, is to permit our judicial system, in the search for proximate cause—the underlying fault which caused the harm—to look behind doors hitherto barred.

*Gazvoda,* 36 Md.App. at 612–13, 375 A.2d 570 (parallel citations omitted).

■ While it is true, as Dennard suggests, that under the Boulevard Rule there is a statutory preference that the unfavored driver who fails to yield the right-of-way to the favored driver is negligent as a matter of law (so long as the favored driver was proceeding lawfully), where, as in the instant case, the evidence was legally sufficient to indicate that the favored driver was *not* proceeding lawfully, the Boulevard Rule preference which is otherwise applicable, is eviscerated.

■ In her brief, Dennard misconstrues the application of the Rule to the facts *sub judice* in that she assumes that either one of two of the following situations *must* necessarily have taken place (and indeed posed this argument in her Motion for JNOV):

[ (1) ] If the jury believed the version of Defendant Green as to the excessive speed of Defendant Procopio, then it would have to find Defendant Procopio negligent[, or (2) ] If the jury[, on the other hand,] believed the version of Defendant Procopio that he was proceeding at the posted speed limit, then it would have to find, pursuant to the Boulevard Law instruction of the Court, that Defendant Green failed to yield the right-of-way, rendering *him* negligent.

Dennard concludes that, given the undisputed evidence that (1) Green was the unfavored driver and Procopio the favored driver and (2) that Green failed to yield the right-of-way to Procopio upon crossing a favored highway resulting in a collision, "under the Boulevard Rule, the only way that Green could avoid liability was by showing that, at the time of the accident, Procopio was not proceeding in a lawful manner."

Although Dennard then cites to both *Covington* and *Gazvoda*, she fails to grasp the "chink" carved into the Boulevard Rule as a result of the revision of the term "right-of-way," as interpreted by those decisions. This is evidenced by her reliance on the "absoluteness" of the Rule as applied in *Redmiles* (which was decided *prior* to both *Covington* and *Gazvoda* ) and her rebuttal to Procopio's well-founded reliance on the recently decided case of *Thodos v. Bland,* 75 Md.App. 700, 542 A.2d 1307 (1988).

In *Thodos,* we held that where it could not be determined which of two drivers/defendants was negligent, a verdict in favor of both drivers (as in the instant case) could not be set aside. In such a case, the plaintiff/appellant retains the burden of proof as to the negligence of each defendant. *Id.* at 716, 542 A.2d 1307. What we said in *Thodos* is especially relevant here:

> We may speculate that the jury answered the question concerning the burden of proof in the way that it did because it could not agree as to which one of the appellees caused the accident. Speculation, however, is insufficient as a basis for finding an abuse of discretion, especially, when, as here, the record negates it. The record in this case is unmistakable in its revelation that the jury unanimously concluded that appellant did not meet her burden of proof as to causation.

*Id.* at 717, 542 A.2d 1307.

In the instant case, it is beyond dispute that Dennard bore the burden of proof. She was required to prove, not only that the accident occurred but also that the negli-

gence of one, or the other, or both of the drivers was responsible for it. *Id.* at 713, 542 A.2d 1307. The trial judge submitted the verdict sheet to the jury asking two questions: 1. Was Douglas Monroe Green guilty of negligence? 2. Was Hugo Anthony Procopio, Jr. guilty of negligence? The jury answered "no" to both questions. Clearly, therefore, they decided that after weighing all of the testimony, appellant had failed to meet her burden of proof as to each defendant.

In order for Dennard to have prevailed on her motion for directed verdict (and subsequent Motion for JNOV) against Procopio, she "had the burden of proving as a matter of law, not only that he was negligent but also that his negligence was a contributing or proximate cause of the collision." *Grue et al. v. Collins,* 237 Md. 150, 160, 205 A.2d 260 (1964). "Cases in which courts may declare, as a matter of law, whether an act was the proximate cause of the injury, are limited to those in which but one inference can be drawn from the facts." *Id.* (*quoting State v. Brandau,* 176 Md. 584, 589, 6 A.2d 233 (1939)). This was not such a case.

When there is sufficient evidence from which a factfinder could determine that the favored driver was *not* proceeding lawfully along the favored route (*e.g.,* in the instant case where there was evidence that Procopio was travelling at twice the posted speed limit and failed to observe Green's vehicle until he was approximately three feet away), "it is for the the jury to determine whether the favored driver lost his statutory preference." *Gazvoda,* 36 Md.App. at 613, 375 A.2d 570.

Based on what we believe is the proper application of the Boulevard Rule (*i.e.,* giving consideration to whether the favored driver was proceeding lawfully *vel non*), we decline to accept Dennard's argument that "the finding of the jury that Procopio was not negligent required that the trial judge enter judgment NOV against Green."

We recognize that the jury's verdict in this case seems, at the very least, unfair to Dennard. We look again, however, to the *Thodos* case where Judge Bell empathetically observed:

[I]t is unquestionably the case that the trial court's denial of appellant's new trial motion patently effects a real injustice to appellant. As we have seen, the record amply demonstrates that appellant was not, and indeed, could not have been, responsible for the accident. Furthermore, the evidence demonstrates that the accident did not result from an act of God or unavoidable consequences. Notwithstanding the foregoing, the undeniable consequence of the court's action is to place the burden of loss on the shoulders of the least blameworthy of all of the parties to the action, appellant herself. On the other hand, the result effected by that exercise of discretion is a lawful one; the jury was at liberty to reach the conclusion that it did.

*Id.* 75 Md.App. at 713, 542 A.2d 1307.

Similarly, in the case at bar, Dennard, without question, was not guilty of any negligence on her part. Notwithstanding that undeniable fact, we hold that her Motions for a Directed Verdict and subsequent JNOV were properly denied, and the evidence viewed in a light most favorable to Green and Procopio was legally sufficient to support the jury verdict. Therefore, we affirm the decision of the trial court to enter judgment on the jury verdict, in effect giving full force to the jury verdict that neither appellee was proved to have been negligent.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.