Agnes HALDEMAN

v.

The BELL TELEPHONE COMPANY OF PENNSYLVANIA and W. Herbert Fry

v.

Mary K. WILKINSON, Appellant.

No. 16458.

United States Court of Appeals Third Circuit.

Argued Oct. 3, 1967.

Decided Dec. 7, 1967.

Rehearing Denied Jan. 12, 1968.

F. Hastings Griffin, Jr., Dechart, Price & Rhoads, Philadelphia, Pa., for appellant.

John B. Hannum, Pepper, Hamilton & Scheetz, Philadelphia, Pa. (David R. Scott, Philadelphia, Pa., on the brief), for appellees.

Before STALEY, Chief Judge, and MARIS and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

STALEY, Chief Judge.

This is an appeal by Mary K. Wilkinson, third party defendant in the district court, from a denial of her motion for judgment notwithstanding the verdict or, alternatively, for a new trial.

Appellant's grandmother, Agnes Haldeman, a Delaware resident, brought suit against the Bell Telephone Company of Pennsylvania and its employee, W. Herbert Fry, for injuries sustained in a motor vehicle accident. Mrs. Haldeman had been riding in the front seat of a car driven by appellant when it collided with a Bell Telephone truck driven by Fry. In a suit on liability issues alone, the damages having been stipulated, the jury returned a verdict in favor of Mrs. Haldeman against the appellees, Bell and Fry. In the third party action on the issue of appellant's joint liability, the jury found in favor of appellees and against appellant.

The accident which precipitated this suit occurred on the afternoon of October 28, 1961, in Chester County, Pennsylvania, where Strasburg Road intersects the two-lane state highway known as Buck Run Road. It was a clear, sunny day; the road surface was dry and visibility good. Appellant, then about 17 years old, was driving her elderly grandmother in the family's Opel sedan. She was proceeding northwardly along Buck Run Road, a through highway with a 50 m. p. h. speed limit, at a speed not faster than 40 to 45 m. p. h. The road was only a few miles from appellant's home and one she had travelled often. Before entering the intersection with Strasburg Road, appellant passed a "Slow" sign located on a hilltop about 400 feet south of the intersection. Anticipating no other traffic as she approached the intersection, she continued downhill toward Strasburg Road in the proper right hand lane at the same speed of from 40 to 45 m. p. h. She did not decrease her speed at any time before she entered the inter-

section and became involved in the collision.

Appellee, Fry, was driving his Bell Telephone truck eastwardly along Strasburg Road approaching Buck Run Road. Strasburg Road intersects Buck Run Road at a 72 degree angle; on Strasburg Road there are "Stop" signs in both directions controlling traffic crossing and turning into Buck Run Road. Some distance before these "Stop" signs are "Stop ahead" signs. Extending westwardly along the southerly side of Strasburg Road from the westerly side of Buck Run Road, there is an earthen bank which rises from about six inches at the westerly side of Buck Run Road to a height of five feet at a point about 87 feet west of Buck Run Road. The bank then continues to a height of seven feet at a distance of 97 feet from the west side of Buck Run Road.

Fry was driving along Strasburg Road at a speed of about 35 m. p. h.; he was looking for trouble in the overhead telephone lines. While his attention was so distracted he failed to see or stop at the "Stop" sign at the western approach to Buck Run Road. He also failed to look for other vehicles in or approaching the intersection but instead proceeded into the intersection at the same speed of about 35 m. p. h. where he collided with the automobile driven by appellant. The collision caused appellant to lose control of the automobile; it flipped over and eventually came to rest at the northeast corner of the intersection.

■ On this appeal appellant contends that she is entitled to judgment notwithstanding the verdict because under the evidence, all of which was Bell's, Bell did not establish that she was negligent, or if she was negligent, it was not shown that her act or omission was the proximate cause of the injury. Of course, when probing the record to see whether there is any merit to appellant's prayer for judgment n. o. v., we are bound to take the evidence and all the reasonable

inferences therefrom in the light most favorable to the verdict winners. Massaro v. United States Lines Co., 307 F.2d 299 (C.A.3, 1962); Evans v. Philadelphia Transportation Co., 418 Pa. 567, 212 A.2d 440 (1965); Pritts v. Wigle, 414 Pa. 309, 200 A.2d 386 (1964). With this in mind we now turn to the issue of appellant's alleged negligence.

Little time need be devoted to this point. For although we are strongly inclined to believe, as a matter of law, that appellant could not have been negligent under the circumstances of this case, it is unnecessary for us to so decide. We by-pass this issue because we are convinced that even if appellant had been negligent, such negligence could not have been the proximate cause of the accident.

It is axiomatic that in the trial of a case like this plaintiffs

" * * * must make it appear that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the harm. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation and conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." Restatement (Second), Torts § 433B, Comment a at 442 (1965).

Appellees had the burden of proving that if appellant had not been negligent no harm would have been sustained. Collichio v. Williams, 311 Pa. 553, 166 A. 857 (1933); Stubbs v. Edwards, 260 Pa. 75, 103 A. 511 (1918); Rankin v. Carroll, 149 Pa.Super. 158, 27 A.2d 487 (1942);

Restatement (Second), Torts § 432(1) (1965). This they failed to do.

Their failure in this regard can be demonstrated by resorting to their theory of the case and to their own evidence. Appellees contend that if appellant had looked to her left as she approached the intersection, Bell's truck, seven feet in height, would have been first visible at least 102 feet west of the center line of Buck Run Road. They then go on to state, as if it were a certainty, that if appellant had seen the truck she would have had time to decelerate her car enough to have avoided the accident. With this we do not agree.

Appellee, Fry, testified that he approached and travelled into the intersection at a speed of about 35 m. p. h. At this speed Bell's truck would have covered the 102 feet on Strasburg Road in two seconds. This would leave appellant only two seconds between the time she could have seen the truck and the time of collision. Now, taking the time-distance chart that Bell introduced into evidence, we see that it would have taken appellant, assuming she were a perfect driver, at least one and one-half seconds to perceive and react. That would have allowed her, at the most, one-half second to slow her car enough to have avoided the truck.

Bell's evidence demonstrates that during the first half second after braking, appellant could not have possibly slowed her car enough to reach the point of impact even one-eighth of a second later than she would if she had not braked at all. And this would be so whether her speed at the moment of brake application was 45 m. p. h. or 30 m. p. h.[1]

---

1. It is appellees' contention that if appellant had decelerated the slightest bit so that she would have arrived at the point of impact just one-eighth of a second later, the accident would have been avoided. In one-eighth of a second, they argue, Fry, moving between 30 m.p.h. and 40 m.p.h., would have been more than five feet further through the intersection, and appellant would have missed him. Counsel for appellant, on the other hand, states rather emphatically that even if appellant were going 20 m.p.h. she would not have been able to slow the car as much as one-eighth of a second before impact.

Unfortunately, appellant's counsel did not inform the court as to what method he utilized in arriving at arithmetic conclusions differing from those of appellees. But since we desired to resolve this troublesome point, we took the time to independently analyze and organize the relevant data. Our fig-

■ Since this is a diversity case and the law of Pennsylvania applies, we look to that law. The Supreme Court of Pennsylvania has held that excessive speed cannot be the proximate cause of an accident when the occurrence could not have been avoided at a lower speed. Collichio v. Williams, supra; Stubbs v. Edwards, supra. In *Stubbs*, a motorcycle travelling on a two-lane road swerved across the center line into the path of an oncoming auto travelling in the opposite direction. A collision resulted. Although the car was travelling in excess of the speed limit, the court nevertheless held that such speed could not be held to be the proximate cause of the accident because the driver would not have had sufficient time to avoid the accident even if he had been travelling at a lower speed.

In the instant case we would be most reluctant to concede, even for purposes of argument, that appellant was going at an excessive speed. But whatever her speed, appellees' own evidence proves that whether appellant was going 45

ures indicate that even at a speed of 30 m.p.h. (but not 20 m.p.h.), appellant could not have decelerated enough to reach the point of impact one-eighth of a second later.

As stated in the text, if Fry were travelling at 35 m.p.h. (and it appears from the record that he was), appellant would have had only two seconds between the time she could have seen the truck and the time of collision, regardless of her speed. Since she would have needed at least one and one-half seconds to perceive and react, she would have had only one-half second to brake her car enough to have avoided the truck.

Assuming linear deceleration and assuming that appellant could have used her full one-half second of braking time, here is the four-step formula that we used:

1. Distance the vehicle travels after brakes are applied, minus the distance the car would have travelled in one-half second without braking, divided by the distance the vehicle travels after brakes are applied, multiplied by the speed when the brake was first applied, equals the speed at the point of impact.

2. Speed at point of impact, plus the speed when the brake was first applied, divided by 2, equals the average speed during deceleration while covering the distance the car would have travelled in one-half second without braking.

3. Distance the car would have travelled in one-half second without braking, divided by the average speed for that distance, equals the time to travel that distance.

4. Time to travel that distance, minus one-half second, equals the time saved by braking.

Now, by applying this formula to the figures contained in Bell's motor vehicle speed chart, we can calculate, fairly accurately, how much time appellant could have saved by braking even if she were travelling at a speed as slow as 30 m.p.h. (All distances are computed in terms of feet, all speeds in terms of feet per second, and all times in terms of seconds.)

1. $\dfrac{76.2 - 21.9}{76.2} \times 43.8 = 31.21$ feet per second

2. $\dfrac{43.8 + 31.21}{2} = 37.5$ feet per second

3. $\dfrac{21.9}{37.5} = .584$ seconds

4. $.584 - .500 = $ .084 seconds saved by braking when travelling at 30 m.p.h.

Since .084 of a second is less than one-eighth (.125) of a second, it is obvious that even if appellant were travelling at 30 m.p.h., a speed which we consider perfectly reasonable under the facts of this case, she could not have avoided the collision. Travelling at 45 m.p.h. she could have saved only .056 of a second by braking. In light of these figures, no reasonable person could conclude that appellant could have done anything to avoid the accident in the fraction of a second that was available to her.

m. p. h. or 30 m. p. h., she could not have avoided the collision. In light of this fact, we can only conclude that there was no basis for the jury's verdict in appellees' favor. It is appellees' evidence which disproves proximate cause, and it is appellees' evidence which, under the law of Pennsylvania, requires judgment n. o. v. for appellant.

Accordingly, the judgment of the district court will be reversed and the cause will be remanded to the district court to enter judgment notwithstanding the verdict in favor of appellant.