FAULKNER, a minor, by and through Mildred H.
Faulkner, his mother and next friend *v.*
CUMMINGS

[No. 249, September Term, 1969.]

*Decided February 3, 1970.*

The cause was argued before HAMMOND, C. J., and
BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*George J. Goldsborough, Jr.*, with whom was *Z. H. Stafford* on the brief, for appellants.

*Ernest M. Thompson*, with whom was *Dorothy H. Thompson* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

Two questions are presented to us in this appeal: (1) Whether or not the appellee, Priscilla Spencer Cummings (Priscilla or defendant) was guilty of primary negligence in the operation of her automobile on May 27, 1968, on Tilghman's Island, Talbot County and (2) Whether or not James A. Faulkner, Jr. (Jimmy), seven (almost eight) years of age when the accident happened, whose mother and next friend Mildred H. Faulkner (Mildred) was the plaintiff below and is an appellant here, and was also a plaintiff individually by oral amendment permitted by the lower court prior to opening statements at the trial, was guilty of contributory negligence as a matter of law. The Circuit Court for Talbot County (Clark, J.) which had originally declined to grant Priscilla's motion for a directed verdict at the end of the case, submitted the case to the jury which rendered a verdict for $2,500 for Jimmy and $1,902.75 for Mildred. The trial court then granted Priscilla's motion for a judgment *N.O.V.* for costs. The lower court indicated in its written opin-

ion that there was no sufficient evidence of primary negligence on the part of Priscilla so that it was unnecessary to further determine whether or not Jimmy was guilty of contributory negligence as a matter of law. We are of the opinion that Judge Clark properly ruled that there was no sufficient evidence of primary negligence on Priscilla's part and we, too, do not find it necessary to pass upon the question of Jimmy's contributory negligence as a matter of law.

At approximately 3:30 P.M., Jimmy and his friend Joey Lowery were walking home from school on the westerly edge of Maryland Route 33, which is the main street of Tilghman, in a northerly direction toward the bridge at Knapps Narrows. Several other school children were also walking in the same direction. The accident occurred at a point where the road is straight and has a width of 20 feet, including both the shoulders and paved surface. There are no pedestrian sidewalks and the shoulder area, approximately two feet wide on each side of the road, is used as an area in which pedestrians walk. It had been raining the day of the accident, and was drizzling slightly at the time of the accident. The road surface was wet. The accident occurred in a residential area of Tilghman near the store of Mary McCarthy. Jimmy and Joey had crossed Mission Road at the point of its intersection with Route 33 and were continuing toward the store. Three or four automobiles were parked off the main portion of Route 33 in front of the store and were facing north toward the bridge. All the cars were on the "wrong side" of the road. The car parked farthest from the bridge was owned by a Mrs. Mister; the car in front of the Mister car was owned by Mr. and Mrs. Gerald Phillips. The house immediately south of the McCarthy's store—owned by a Mrs. Harrison—has a sidewalk running from the house to the edge of the road. On the east side of Route 33 opposite the sidewalk, is a private driveway leading to Mrs. Garvin's house. It was at this point, in the middle of the block, that Jimmy attempted to cross Route 33. Jimmy's father testified for the plaintiffs that his son

was crossing "past his turn" in the middle of the block inasmuch as his home was on Mission Road and Jimmy had been taught to cross at the Mission Road intersection with Route 33.

Priscilla, called as an adverse witness by the plaintiffs, testified that she saw Jimmy before he crossed Route 33 when he came out from behind a parked car (this car was the last of the three cars parked off the west side of Route 33), looked to his left toward the bridge and "then just darted out in front of me striking my car." She was driving between 10 and 15 miles per hour. She immediately put on her brakes and stopped almost immediately less than a foot after the impact. She said that the impact with Jimmy occurred where the bumper curls around the front of the fender of her automobile. Jimmy's body was thrown "off the left side" of her car, about two or three feet from her car. Leaving her car, Priscilla walked forward to reach him.

Jimmy and other witnesses testified that he *walked* across Route 33. When Priscilla saw Jimmy look to his left, she testified he was "maybe five, six foot" from her car. She did not sound her horn but stopped almost immediately. Jimmy's injuries consisted of a fracture of the femur in his *right* leg and a large bruise from his right hip to his knee. Priscilla, Joey and Mrs. Phillips all testified that Jimmy had his head down as he was going to cross Route 33. Mrs. Phillips testified that "he was sort of bent over like he was trying to keep things from getting wet."

There is no dispute that Priscilla's automobile was proceeding on the right-hand side of the road, east of the center of Route 33, when the impact occurred and that she had driven on the right-hand side of the road prior to the accident. Priscilla testified that she was in a congested area and had her mind on her driving, on the traffic in front and in back of her and further that there was traffic, including a school bus, crossing in the opposite direction at the time of the impact.

In the present posture of the case, we must assume the

truth of all evidence, and all reasonable inferences from those facts, in favor of the appellants. *Polson v. Martin,* 228 Md. 343, 180 A. 2d 295 (1962) ; *Henkelmann v. Metropolitan Life Insurance Co.,* 180 Md. 591, 26 A. 2d 418 (1942). If there is " 'any evidence, however slight, legally sufficient as tending to prove negligence, the weight and value of such evidence will be left to the jury.' " *Perlin Packing Co., Inc. v. Price,* 247 Md. 475, 483, 231 A. 2d 702, 707 (1967) ; *Valench v. Belle Isle Cab Co.,* 196 Md. 118, 122, 75 A. 2d 97, 98 (1950).

We are mindful that the driver of a motor vehicle must exercise greater caution to avoid injury to a child who is in a place or situation of immediate or of potential peril than the driver would in the case of an adult. *Dorough v. Lockman,* 224 Md. 168, 167 A. 2d 129 (1961). See also 2A Blashfield, *Cyclopedia of Automobile Law and Practice,* § 1492, page 386 and *Restatement of Torts* 2d § 290k, page 51.

Applying these principles to the facts in the present case, we cannot find any evidence of primary negligence of Priscilla which would justify the submission of the case to a jury.

Priscilla was driving at a speed of 10 or 15 miles per hour, a reasonable rate of speed under the conditions then existing, and was obeying the rules of the road. See *Cocco v. Lissau,* 202 Md. 196, 95 A. 2d 857 (1953). She stopped her vehicle almost instantly and there were no skid marks. She was between intersections and was properly giving her attention to her driving. As Chief Judge Thomsen aptly observed in *Mumford v. United States,* 150 F. Supp. 63, 66 (D.Md., 1957) a driver of a motor vehicle "must use reasonable care to observe conditions along the side of a highway, although his *primary attention* should be directed to the road in front." (Emphasis supplied.) She had seen Jimmy and Joey, as well as other children, walking along the westerly edge of Route 33. Shortly before Jimmy came onto Route 33 to cross it, Priscilla had momentarily lost him from view because of her concentration upon the traffic ahead of her. She had no reason, in

our opinion, to anticipate that a child who had not crossed Route 33 at the intersection of Mission Road would attempt to cross Route 33 where Jimmy attempted to cross it. It could not be anticipated by her that he would leave his position of safety and cross Route 33 without looking to his right. As Judge Marbury, for the Court, stated in regard to a child two and one-half years of age, in *Richardson v. Scott,* 232 Md. 490, 495, 194 A. 2d 288, 291 (1963) :

> "The appellants claim that the little girl standing on the grass plot with a background of the green hedge must have been in plain view of the appellee and, therefore, the appellee should have taken proper action to avoid striking the child should she leave the place of safety and move either in front of or against the front portion of the car. Miss Scott had noticed Sue Ann on one prior occasion when the child, with other children, was in the street in the vicinity of her home. She had noticed the child in her own yard on a second prior occasion when she traversed the street. On the third occasion, when the accident occurred, seeing no children in the street and devoting her attention to the street ahead of her which was her primary duty, she, we think, can not be legally held to be negligent in not anticipating that the child, even if it had been seen by her as she approached, would either leave the grass plot and walk or run into the path of her car as she reached the entrance of the driveway."

When Priscilla became aware of Jimmy's presence at the edge of Route 33, just before he looked to the left and then started across the road, there was no more than 12 feet between Priscilla's car and Jimmy. The boy immediately came into the road and collided with her car. In the very short time it took for this to occur, it was not possible for Priscilla to do anything to avoid the col-

lision. It is true that she did not blow her horn, but because the impact was almost immediate, the absence of the blowing of her horn (assuming for the argument that she was obligated to blow the horn at all) cannot be considered as a proximate cause of the accident. *Alina v. Raschka,* 254 Md. 413, 420, 255 A. 2d 76, 79-80 (1969); *Bess v. Quinn,* 231 Md. 540, 542, 191 A. 2d 243, 244 (1963). See *Mumford v. United States, supra.*

The instant case is to be distinguished from our decision in *Levine v. Beebe,* 238 Md. 365, 209 A. 2d 67 (1965) in which the driver of the automobile which struck a six year old child knew that the child and her brother were standing on the side of the road, that the bus picked up the children on the other side of the road from where he saw them standing and that prior to the impact he saw the bus approach its pick-up station. As Judge Marbury stated for the Court in *Levine:*

> "The case is a borderline one. It comes very close to fitting in the category of the long line of child-darting-in-front-of-motorist cases, which are illustrated by *Richardson v. Scott,* 232 Md. 490, 194 A. 2d 288 and *Dorough v. Lockman, supra.* We have no intention to recede from the holdings in those cases. But we think the fact that appellant knew the bus picked up the children on the opposite side of the road from where he saw standing and actually saw the bus near its pick-up location distinguishes this case from the line of cases mentioned above, and justified submitting the questions of primary and contributory negligence to the jury. Cf. *State, Use of Taylor v. Barlly,* 216 Md. 94, 140 A. 2d 173."
> (238 Md. at 369-70, 209 A. 2d at 69).

In our opinion, the present case comes within the ambit of our prior decisions in the "dart-out" cases, even though the "dart-out" was perhaps not as accelerated as "dart-outs" in many of the cases. Even though Jimmy

"walked" into or in front of Priscilla's automobile, she had no reason to anticipate his leaving a place of safety and there was not sufficient time for her to avoid the collision, as we have already indicated. She was driving properly in accordance with the rules of the road and we can find no legally sufficient evidence which would justify the submission of any issue of her primary negligence to a jury.

As we have already stated in view of the absence of Priscilla's primary negligence, it is unnecessary for us to pass upon the interesting question of whether or not Jimmy was guilty of contributory negligence as a matter of law.

*Judgment affirmed, the appellants to pay the costs.*