GEORGE CHARLES KEMP ET AL. *v.* ROGER WILLIAM ARMSTRONG ET AL.

[No. 80, September Term, 1978.]

*Decided November 3, 1978.*

The cause was argued before MOORE, MELVIN and MacDANIEL, JJ.

*I. Marshall Seidler* and *Alvin I. Frederick,* with whom were *Archibald Eccleston, III* and *Eccleston, Seidler & Miller* on the brief, for appellants.

*Henry E. Dugan, Jr.,* with whom was *Jerome J. Seidenman* on the brief, for appellee Armstrong. Submitted on brief by *Bernard M. Goldstein* and *William D. Kurtz* for other appellee.

MELVIN, J., delivered the opinion of the Court.

The actors in this negligence litigation are two garbage truck operators (Spindler and Kemp), a motorcycle operator (Armstrong) and a motor vehicle operator (Wardlaw). The plaintiffs below were Armstrong and Wardlaw. After a jury trial in the Superior Court of Baltimore City they obtained judgments against Spindler and Kemp and their respective employers. Kemp and his employer's motion for judgment n.o.v. was denied by the trial judge and they have appealed that ruling. Spindler and his employer have not appealed.[1] We now reverse the judgment against Kemp and his employer, Robb Tyler, Inc.

I

The motor vehicle accident giving rise to the litigation occurred on July 22, 1975, in the Brooklyn section of Baltimore City, on West Patapsco Avenue, a six-lane road divided by a concrete median strip. Both Kemp and Spindler, the garbage truck drivers, had finished dumping their loads in a

---

1. Prior to trial, both plaintiffs executed joint tort feasor releases in favor of Spindler and his employer.

landfill located on the south side of West Patapsco Avenue. The Spindler truck exited the landfill, made a right turn and proceeded in the right eastbound lane of West Patapsco Avenue. Shortly thereafter, the Kemp truck exited the landfill, made a right turn and proceeded in the center eastbound lane of West Patapsco Avenue. As both drivers proceeded eastbound, Spindler turned on his left directional signal. Kemp then glanced into his left rearview mirror and flashed his headlights twice. Spindler then moved over into the center eastbound lane in front of the Kemp truck and then into the left eastbound lane in an attempt to make a U-turn at an opening in the median with the ultimate purpose of proceeding westbound on West Patapsco Avenue. Before he could complete the U-turn Spindler's truck was struck in the left rear in the left eastbound lane by the appellee Wardlaw who had been proceeding easterly in that lane. Appellee Armstrong, following closely behind Wardlaw on his motorcycle, struck the rear of the Wardlaw vehicle. There was no contact between the Kemp truck and any other vehicle.

## II

The appellees (plaintiffs below) alleged that Kemp was negligent:

> ". . . in that he did negligently and improperly, and from a point to the rear of the Spindler vehicle, signal to the Defendant, Stephen Joseph Spindler, that the way was clear for the said Stephen Joseph Spindler to operate his truck from the right-hand lane of eastbound West Patapsco Avenue traffic across the remaining lanes of traffic thereon, that he failed to keep a proper lookout, that he failed to observe the presence and proximity of approaching motor vehicular traffic from his rear and in particular, the approach of the Wardlaw automobile and the [Armstrong motorcycle], that he did give an erroneous signal to the Defendant, Stephen Joseph Spindler, to proceed across the center and left

eastbound lanes of West Patapsco Avenue and was in other respects negligent; . . . ."

On appeal Kemp contends, as he did below, that his signal to Spindler was an act of courtesy indicating only that as far as Kemp was concerned he (Kemp) would not interfere with Spindler's action in pulling into the lane in front of him in the process of his entrance into the median. The appellees on the other hand contend, as they did below, that there was evidence that the signal meant that the road was clear for a U-turn and that Kemp, having voluntarily undertaken to check the road for traffic in the left eastbound lane, owed a duty to the appellees and that his negligent failure to discharge that duty was a proximate cause of their injuries.

Where the trial court has denied a motion for a directed verdict or a motion for a judgment *n.o.v.* made by a defendant, we must in determining the propriety of the ruling, resolve all conflicts in favor of the plaintiffs and assume the truth of all evidence and such inferences as may naturally and legitimately be deduced therefrom which tend to support the plaintiffs' right to recover. "Or, as it is often stated, the evidence must be considered in the light most favorable to the plaintiff(s)". *Campbell v. Jenifer,* 222 Md. 106, 110, 159 A. 2d 353, 355. Viewing the evidence in this manner, we think it would support the following factual findings by the jury:

1. Kemp knew that when Spindler turned on his left turn signal that Spindler intended to cross the eastbound center lane and the eastbound left lane to enter the median preparatory to making a U-turn into the westbound lanes of West Patapsco Avenue.

2. Spindler could not see the traffic in the eastbound left lane while he was still in the right eastbound lane of West Patapsco Avenue at the time he turned on his left turn signal.

3. When Kemp saw Spindler's left turn signal, he looked in his rear view mirror to ascertain whether there was traffic in the left lane; seeing none, he flashed his lights to indicate to Spindler that he could safely make the U-turn he knew he intended to make.

4. When Spindler crossed into the center lane ahead of Kemp within a short distance of reaching the median, *he looked for himself* before crossing the left eastbound lane into the median. *Having determined for himself* that the way was clear he proceeded across the left eastbound lane into the median and either stopped or nearly stopped while waiting for westbound traffic on West Patapsco Avenue to clear. At the time he was struck by the Wardlaw vehicle, the rear of his truck was still protruding a few feet into the left eastbound lane of West Patapsco Avenue. The Wardlaw vehicle struck the left rear corner of his truck.

At the time of the accident, Md. Code, (1957) Art. 66½, § 11-309 (1) (now codified as § 21-309 (b) of the Transportation Article of the Md. Code (1977)), provided:

"A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until *the driver* has first ascertained that the movement can be made with safety." (Emphasis added).

This statutory duty with respect to changing lanes can not be delegated to other drivers on the highway. Spindler's duty with respect to changing lanes, therefore, could not have been delegated to Kemp. The appellees do not seem to dispute this proposition. Instead, they seek to invoke against Kemp the principle of liability for the negligent performance of a voluntarily assumed duty. Under the particular circumstances of this case, we think the jury could reasonably have found that Kemp did in fact assume the voluntary duty of checking the traffic conditions in the left lane for the purpose of determining whether Spindler could safely come across his path into the left lane in the process of making his U-turn at the median. Having assumed that duty, even though gratuitously, he was bound to act carefully. As stated by Judge Cardozo in *Glanzer v. Shepard,* 233 N. Y. 236, 135 N. E. 275, 276, 23 A.L.R. 1425 (1922), "It is ancient learning that one who assumes to act, even though gratuitously, may

thereby become subject to the duty of acting carefully, if he acts at all". Under the facts of the present case, however, we do not think this principle is applicable to impose liability upon Kemp, for even if it be assumed that Kemp acted without due care in failing to detect the presence of the Wardlaw and Armstrong vehicles, we agree with Kemp's further contention in this appeal that there is no evidence that Spindler went into the left lane in reliance on Kemp's signal.

Spindler was called to testify for the plaintiffs as an adverse witness. He testified without equivocation on several occasions during the questioning that the signal he received from Kemp meant to him (Spindler) that "there was no traffic coming and I could come into the *center* lane" and "that I could come over into his [Kemp's] lane". He further testified as follows:

"Q. And then there eventually came a time that you went from the center lane, you said, across the left lane and into the median; is that correct? A. That's correct.

Q. Did you look for yourself before you crossed the left land [sic] or went into the left lane? A. Yes.

Q. Did you ever rely on Mr. Kemp to give you clearance across that left lane? A. I looked for myself.

Q. Did you ever rely on anything that he did to get you across that left lane? A. No."

\* \* \*

"Q. He let you come in front of him; is that right? A. Yes.

Q. And you did go in front of him; is that right? A. Yes.

Q. So, without any concern — I am not concerned with this question regarding distance or anything — before you went from the center lane across the fast lane you looked for yourself; is that correct? A. Correct.

Q. And you satisfied yourself that the way was clear for you to go; is that correct? A. Yes, sir."

It is clear, therefore, that regardless of what Kemp may have intended by his signal or what duty he may have thereby gratuitously assumed, so far as Spindler, the signalled driver, was concerned, it meant nothing more than that he could safely proceed into the center lane, but not necessarily into the left lane. To cross the left lane, the lane in which the accident occurred, he "satisfied" himself, albeit negligently, "that the way was clear", without reliance upon "anything" that Kemp did. Spindler's testimony at trial was strengthened by his written statement to the investigating police officer at the scene of the accident. The statement was placed in evidence as a *plaintiff's* exhibit. It reads:

"I had just left the dump on Patapsco Ave. I was east on Patapsco Ave. & in the right lane moving very slow. My intention was to make a U turn in front of the General Tire Co. A truck in the center lane a green dumpster blinked his head light & motioned for me to come around. I checked my side view mirror & it was clear all the way back to the railroad bridge. That is the lanes that I could see. *I started to make my turn as I passed the front of the green truck I looked again* & I didn't see any traffic. I was between the island still making my turn. That's when I felt an impact. I pulled to the side stopped got out & saw that a car had hit me. (Emphasis added.)

In this case, therefore, according to the appellees' own evidence, Kemp's actions, whether negligent or not, were not a proximate cause of the accident. The sole proximate cause of the accident clearly was Spindler's own negligence in changing lanes without ascertaining that he could do so with safety. Any initial negligence on Kemp's part as a potential cause of the accident was superseded by the independent and later voluntary action of Spindler in undertaking to proceed into the left lane when it was unsafe to do so. Put another way, even if Kemp reasonably believed that Spindler

interpreted Kemp's signal to mean that he (Spindler) could safely traverse the left lane and believed that Spindler was relying upon that signal when he went into the left lane, the uncontradicted fact, established by the plaintiffs themselves, that Spindler did not so interpret the signal and did not so rely upon it, eliminates Kemp's signal, whether given negligently or not, as a proximate cause of the accident.

It has been said by the Court of Appeals that,

> "While it is true that duty and causation are normally questions of fact for the trier of the facts to decide, nevertheless, when the facts are not disputed and it is certain that reasonable minds could draw but one inference from such facts, as in the present case, the issue may be resolved as a matter of law." *Liberto v. Holfeldt*, 221 Md. 62, 67, 155 A. 2d 698 (1959).

Under the facts of this case, we conclude as a matter of law that Kemp was not guilty of any actionable negligence in the appellees' suit against him and his employer. The denial of their motions for directed verdict and judgment *n.o.v.* therefore requires that the judgment against them be reversed.

Although factually different, we find support for this result in *Dix v. Spampinato,* 278 Md. 34, 358 A. 2d 237 (1976), and the cases cited with approval therein. *See, e.g., Van Jura v. Row,* 191 N.E.2d 536 (S. Ct. Ohio, 1963), and *Devine v. Cook,* 279 P. 2d 1073 (S. Ct. Utah, 1955).

*Judgment reversed.*
*Costs to be paid by appellees.*