609 A.2d 1182

**Ida Patricia MYERS**

v.

**Matthew Lynn BRIGHT.**

**No. 106, Sept. Term, 1991.**

Court of Appeals of Maryland.

Aug. 6, 1992.

396

John H. McDowell (McDowell & Myers, P.A., both on brief), Hagerstown, for petitioner.

Conrad W. Varner (Danny B. O'Connor, Earl W. Bartgis, Jr., Miles & Stockbridge, all on brief), Frederick, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

CHASANOW, Judge.

Ida Patricia Myers, the plaintiff in the automobile accident case now before this Court, may have been speeding when the collision occurred. The judge presiding at the trial, however, found as a matter of law that, even if Myers had been going faster than the rules of the road allow, she was not guilty of contributory negligence under the facts presented and there was no need to submit that issue to the jury. The Court of Special Appeals thought otherwise and reversed. *Bright v. Myers*, 88 Md.App. 296, 594 A.2d 1177 (1991). We granted Myers' petition for a writ of certiorari and, for the reasons we shall now give, reinstate the judgment in her favor.

Myers was driving her Plymouth home from work along U.S. Route 11 in Hagerstown one May afternoon. She was in the right-hand southbound lane, which was for through traffic; the lane to her left was for vehicles turning left at an intersection some distance down the road. Coming up on her right was a Burger King restaurant with an entrance onto the highway. The vehicles to her left were stopped, waiting to turn left at the intersection approximately 50 feet past the Burger King.

Matthew Lynn Bright, who was driving a Buick in the opposite direction, northbound on Route 11, wanted to turn left into the Burger King, a maneuver that required him to cut through the line of cars in the left turn lane and then cross the southbound lane of traffic. Among the southbound vehicles lined up to turn left was a pickup truck just north of the Burger King entrance. The driver of the pickup truck motioned to Bright to go ahead and turn in front of him. Bright tried to turn left across both southbound lanes and into the Burger King's parking lot. He was unsuccessful.

Myers testified that she saw Bright's car emerging from in front of the pickup "[m]aybe a split second" before the crash and that she "stood up on" her brakes, pressing on them as hard as she could to avoid an accident. But, Myers said, there was no way to keep her car from colliding with the Buick that had thrust itself into her path, "[b]ecause I was right on top of him as he was coming through." Other than the police report of the accident, Bright presented no evidence explaining why the mishap occurred. That report accused Bright of "fail[ing] to see [Myers] in the through lane and fail[ing] to grant the right of way."

In granting Myers' motion for judgment, Judge Frederick C. Wright, III, who was presiding over the Washington County Circuit Court trial, noted that

"Mr. Bright had a duty to yield the right of way to Mrs. Myers. And that duty to yield was not lessened by any third party direction. He crossed into her right of way. He either saw but did not yield or failed to see what was

obviously there. And there is no other response that any trier of fact would come to but that he is negligent as a matter of law and also she has the right to assume that no one is going to take the right of way from her. I don't see that she did anything that contributed to the accident at all.... She was traveling perhaps in excess of the posted speed limit. But that by itself is not evidence of contributory negligence from one who must assume that no one is going to take the right of way."

When Bright's trial counsel argued that speeding was evidence of negligence, Judge Wright responded,

"The case law is contrary as far as somebody exceeding the posted speed limit on a through highway and the boulevard rule. No there's nothing here that any reasonable jury could find was any negligent act by her which contributed to the cause of the collision as a matter of law."

The trial court submitted only the issue of damages to the jury, which then awarded Myers $30,000 in compensation for her injuries.

The Court of Special Appeals found that Judge Wright erroneously applied the "boulevard rule" [1] to facts of this case. 88 Md.App. at 303, 594 A.2d at 1180. In ordering that the matter be returned to Washington County for a new trial, the intermediate court said that the jury should have been presented with two questions: (1) Was Myers' car near enough to create an "immediate danger" of which Bright should have been aware? (2) Was Myers contributorily negligent because she was speeding? 88 Md.App. at 305, 594 A.2d at 1181.

---

1. The boulevard rule was developed to give preference to drivers on highways when they encounter other drivers attempting to enter or cross through highways. For a discussion of the rule, its interpretation, and its evolution to 1977, see *Dean v. Redmiles*, 280 Md. 137, 143–59, 374 A.2d 329, 333–41 (1977). This Court has removed some of the harshness from the boulevard rule as it was originally enunciated. *See Covington v. Gernert*, 280 Md. 322, 373 A.2d 624 (1977).

■ A party may move for judgment at the close of the evidence. Maryland Rule 2–519. "[I]f there be any evidence, however slight, *legally sufficient* as tending to prove negligence, ... the weight and value of such evidence will be left to the jury." *Fowler v. Smith,* 240 Md. 240, 246, 213 A.2d 549, 554 (1965). "Legally sufficient" means "that a party who has the burden of proving another party guilty of negligence, cannot sustain this burden by offering a mere scintilla of evidence, amounting to no more than surmise, possibility, or conjecture that such other party has been guilty of negligence, but such evidence must be of legal probative force and evidential value." *Id.* at 247, 213 A.2d at 554. Without that prima facie showing, the issue of negligence should not be submitted to the trier of fact. *Alina v. Raschka,* 254 Md. 413, 422, 255 A.2d 76, 81 (1969); *Moulden v. Greenbelt,* 239 Md. 229, 232, 210 A.2d 724, 726 (1965). *See also* W. Page Keeton, *Prosser and Keeton on Torts* (5th ed. 1984), § 37 at 236 ("If the evidence is such that no reasonably intelligent person would accept it as sufficient to establish the existence of a fact essential to negligence, it becomes the duty of the court to remove the issue from the jury....").

■ With these principles in mind, we turn to the issues in the case before us. First, we must examine whether the evidence of Bright's negligence is as clear as Judge Wright found it to be.

Bright turned left after being waved across by the pickup truck and began traversing two lanes of traffic without being able to see the oncoming traffic to the right of the pickup truck. Motorists turning left have a duty to yield to oncoming traffic that is dangerously close. Maryland Code (1977, 1987 Repl.Vol.), Transportation Article, § 21–402(a) provides:

> *"Turning left.*—If the driver of a vehicle intends to turn to the left in an intersection or into an alley or a private road or driveway, the driver shall yield the right-of-way to any other vehicle that is approaching from the

opposite direction and is in the intersection or so near to it as to be an immediate danger."

In his brief, Bright makes much of the fact that "right-of-way" is now defined by statute as "the right of one vehicle or pedestrian to proceed *in a lawful manner* on a highway in preference to another vehicle or pedestrian." Md.Code (1977, 1987 Repl.Vol.), Transportation Art., § 21–101(r) (emphasis added). If Myers had been speeding, his argument goes, she cannot take advantage of the right-of-way statute because she had not been proceeding "in a lawful manner."

For support, Bright calls upon our decision in *Covington v. Gernert*, 280 Md. 322, 373 A.2d 624 (1977). In that case, a man named Gernert was driving the wrong way on a one-way favored highway. He collided with a car driven by a man named Covington, who had entered the highway after stopping at a stop sign and looking to his left, the only direction on that one-way street from which he could expect vehicles to be coming. We said that Gernert, in driving in a direction from which he could not reasonably be anticipated by other drivers, was not proceeding "in a lawful manner," and therefore did not have an absolute right of way over Covington. 280 Md. at 324, 373 A.2d at 625. Considering Gernert's clearly dangerous and unlawful conduct, we held that Covington was not contributorily negligent as a matter of law, even under the harsh dictates of the boulevard rule. 280 Md. at 325, 373 A.2d at 625. He was not required to anticipate a car coming at him from the wrong direction.

There is no evidence that Bright's conduct compares to Covington's—or that Myers' alleged speeding compares to Gernert's violation of the law. Bright did not see Myers, because he could not see *anyone*, regardless of whether or not they were obeying the speed limit. At the moment he tried to cross the highway, there was a pickup truck and a line of vehicles in the southbound turning lane blocking his view. Bright could reasonably expect motorists to be coming southbound in the other lane, and he was obliged to look carefully before proceeding across. If he could not see anything, he should have waited until his line of sight was

clear before completing the turn. Whatever the situation, it would be illogical to hold that Myers' speed relieved Bright of his general duty to give attention to those vehicles he could reasonably anticipate would be on the road.

Making left-hand turns on two-way roads, especially highways, can be perilous. When permitted, left turns

"should be made cautiously, in the exercise of due care, and the responsibility for seeing that the turn can be made in safety is placed on the motorist desiring to make the turn, without regard to which vehicle enters the intersection first. A driver attempting a left turn must keep a proper lookout for other vehicles in, or approaching, the intersection."

3 *Blashfield Automobile Law and Practice* § 114.122 at 260–62 (1965) (footnotes omitted) (hereinafter *Blashfield*).

Had Bright seen Myers' car approaching and decided that he would be able to make it across the two southbound lanes before she arrived at the location, a jury question on Bright's primary negligence might have been presented. In some circumstances, someone planning to turn left might make a reasonable observation of the oncoming motorist and realize that (1) the driver is not obeying the speed laws and (2) the turn cannot be made safely. Under other circumstances, however, the turning driver, making a reasonable observation of traffic, will not be able to recognize that the oncoming vehicle is moving faster than the law allows and might reasonably proceed into the turn. Factors that might mask an approaching vehicle's speed from a prudent driver—and thus lead him or her to misjudge the timing of its arrival—could include weather conditions, distance, topography, angle of observation, etc.

Thus, a speeding driver may not appear to necessarily constitute "an immediate danger" to a left-turning driver, even when the laws of physics dictate that there will be a collision if the turning driver proceeds. Drivers, including those intending to turn left, are ordinarily entitled to assume that other drivers are obeying the law. Visual or

aural information sufficient to overcome the ordinary assumption that the approaching driver is travelling within the speed limit might not be available. Such a scenario, however, is not what we have in this case. Bright could not see and therefore had no chance to gauge the speed or location of any oncoming vehicle. As we noted above, turning blindly into oncoming traffic is negligent regardless of what that traffic is doing.

To be sure, there was testimony that the pickup truck driver waved Bright on. But Bright cannot attribute the accident solely to him. The situation that confronted Bright "is one that occurs to motorists every day." *Van Jura v. Row*, 175 Ohio St. 41, 191 N.E.2d 536, 537 (1963). Someone wanting to make a left turn is not relieved of responsibility because another motorist signals that the coast is clear. Bright's "obligation, as he moved left across the path of other vehicles, was to keep a lookout for such traffic, and not depend upon the act of another." 191 N.E.2d at 538. *See also Kemp v. Armstrong*, 40 Md.App. 542, 546, 392 A.2d 1161, 1164 (1978), *cert. denied*, 284 Md. 741 (1979) (One driver signaled another that the way was clear for a U-turn; it wasn't, and an accident ensued. Statutory duty "with respect to changing lanes can not be delegated to other drivers on the highway."); *Dawson v. Griffin*, 249 Kan. 115, 816 P.2d 374, 379 (1991) (Truck driver's hand signal unclear as to whether it was a guarantee of safety or a courteous gesture to indicate driver was yielding the right of way; nevertheless, the signaled driver "had a nondelegable duty to yield to oncoming traffic while making a left turn; and the only reasonable and safe thing to assume from a hand wave is, '*I* won't hit you.'"); *Government Emp. Ins. Co. v. Thompson*, 351 So.2d 809, 810 (La.App. 1977) ("Mr. Decuir's signal was intended to give Mr. Thomas permission to pass in front of Mr. Decuir's stopped truck. Mr. Thomas cannot be relieved thereby of his obligation to keep a proper lookout for oncoming traffic in other lanes of traffic. His misinterpretation of Mr. Decuir's courteous

gesture cannot serve to render Mr. Decuir guilty of negligence proximately causing the ensuing accident.").[2]

Bright had responsibility for making sure—or at least checking to see—that the highway was clear before proceeding across. Because the evidence is uncontroverted that he did not do so, Bright was negligent as a matter of law. Of course, that determination does not end our inquiry. "Negligence, whether established through the application of common law principles, or by showing a violation of a relevant statute, is not actionable unless it is a proximate cause of the harm." *Atlantic Mutual v. Kenney*, 323 Md. 116, 127, 591 A.2d 507, 512 (1991). After reviewing the evidence presented in the trial below and discussed in this opinion, we agree with Judge Wright that Bright's negligence in crossing the highway without being able to see was unquestionably a proximate cause of the accident.

Having established Bright's primary negligence and his responsibility for the accident, we move to the second question: whether Myers was guilty of contributory negligence because she may have been exceeding the speed limit. On this point, we must also consider causation, because unless a plaintiff's negligence "was the direct and proximate cause of the accident, it would not bar her right to recover." *Friedman v. Hendler Creamery Co.*, 158 Md. 131, 148, 148 A. 426, 433 (1930). "As on the issue of negligence, whether an operator's negligence as to rate of speed was a proximate cause of an accident may be ruled as a matter of law where reasonable persons could not differ on the issue." 2 *Blashfield* § 105.7 at 324 (1979) (footnote omitted). And, as always, the "defendant has the burden of establishing contributory negligence on the part of a plaintiff." *Atlantic Mutual*, 323 Md. at 135, 591 A.2d at 516. On this issue, too, we agree with the trial court that there was not enough evidence for a jury's consideration.

---

2. Whether or not the unidentified truck driver would share liability for the accident is another question. We rejected a comparable claim in *Dix v. Spampinato*, 278 Md. 34, 38–39, 358 A.2d 237, 239 (1976).

The Court of Special Appeals apparently determined from Judge Wright's reference to the boulevard rule that he was applying it in its antiquated version, which gives favored drivers the right-of-way regardless of contributory negligence. 88 Md.App. at 300–03, 594 A.2d at 1179–80. We believe that the trial judge was merely making an aside about the boulevard rule and recognized that Myers' contributory negligence would have precluded recovery. Judge Wright, however, found that there was no evidence of contributory negligence. Even before his reference to the boulevard rule, Judge Wright had stated, "I don't see that [Myers] did anything that contributed to the accident at all." We agree with Judge Wright.

We must keep in mind that there is no hard evidence that Myers was, in fact, speeding. There is merely a possibility that she was driving her car a few miles an hour above the posted limit. A motorcyclist waiting behind the pickup truck in the left turn lane testified that he could not say whether or not Myers was going faster than the law allowed. He did, however, glance in his rearview mirror after he saw the pickup driver wave Bright to cross. When he spotted Myers coming along, he said, "Oh my God," knowing that an accident was about to happen.

Bright never said anything about Myers' speed. The only time speeding became an issue was when Myers testified that she was driving "somewheres around 30, 35 mile an hour" and then was impeached with her deposition testimony in which she said she may have been going "about 40." According to the police accident report, the speed limit on the road was 30, though Bright himself acknowledged that there may have been signs proclaiming the limit to be 35 miles per hour and Myers at one point thought the speed limit might have been 45. In other words, neither Bright nor Myers could say how fast she was moving or what the speed limit on the road was. No one else testified that Myers had been speeding, and there was no physical evidence, such as unexpectedly long skid marks, pointing to any violation of the law by Myers.

Even assuming that Myers was definitely speeding, she is not barred from recovery unless the accident can be at least partly attributable to her rate of travel. "Exceeding the speed limit does not constitute actionable negligence unless it is a proximate cause of injury or damage." *Alston v. Forsythe,* 226 Md. 121, 130, 172 A.2d 474, 477 (1961). As is the case with speculation in other areas, mere conjecture that the accident might have been caused by the alleged speeding is insufficient to send the case to the jury. Our reasoning in *Alston* is in harmony with decisions throughout the country. "Evidence that a motorist was exceeding a posted speed limit or driving at an excessive rate of speed is not actionable unless such speed is a proximate cause of the accident. To show merely excessive speed is ordinarily not enough to support a verdict based on negligence unless there is some further showing that this excessive speed is a direct and proximate cause of the injury." Keith C. Miller, *Automobile Accident Law and Practice,* § 19.10 (1991) (footnote omitted) (hereinafter *Miller*).

In *Roper v. Archibald,* 680 S.W.2d 743 (Mo.App.1984), Missouri's intermediate court was presented with the case of a motorist who had turned left in front of an oncoming moped. The moped driver sued the motorist, who then contended that the moped had been going unreasonably fast given the circumstances at the time. The Missouri court stated, "Causal connection between the excessive speed and the collision must be proved by the evidence, as a fact, and not be left to mere speculation and conjecture." 680 S.W.2d at 748. Because the moped was only a few feet away from the motorist when he saw it, the accident would have happened even if the moped had been going much slower.

"[A]s the collision was unavoidable even at 10 miles per hour, plaintiff's speed of 20 miles per hour, even if negligently excessive, was not the cause, or a contributing cause, of the accident. That being so, the evidence viewed most favorably to defendant failed to supply the element of causation in regard to plaintiff's alleged excessive speed. Lacking that element, submission of exces-

sive speed as an assignment of contributory negligence was error."

680 S.W.2d at 749–50.

Furthermore, "speed in excess of the posted speed limit is not the proximate cause of an accident when the vehicle is where it is entitled to be and the driver would not have been able to avoid an accident even had he been driving at the lawful speed." *Miller,* § 19.10. Myers was where she was entitled to be: going the correct direction in a through lane when suddenly Bright emerged from in front of the pickup truck. She would not have been able to avoid the accident even had she been driving within the posted limit.

For other cases where courts resolved as a matter of law issues of speeding and causation, see *Haldeman v. Bell Telephone Company of Pennsylvania,* 387 F.2d 557, 560–61 (3d Cir.1967) (jury verdict reversed because no evidence that speeding was proximate cause of accident); *Smith v. Sherman Smith Trucking Co.,* 569 So.2d 347, 349 (Ala. 1990) (trial court properly granted summary judgment because there was no evidence that speeding caused the accident); *Hale v. Cravens,* 129 Ill.App.2d 466, 263 N.E.2d 593, 596 (1970) ("Whether the speed of plaintiffs' automobile was 60 miles per hour or 70 miles per hour [in 65–mile–per–hour zone], the sole cause of the collision was the fact that defendant drove her automobile directly into the path of the plaintiffs' vehicle under circumstances that afforded plaintiffs no opportunity to avoid the collision."); *White v. Greyhound Corporation,* 46 Wash.2d 260, 280 P.2d 670, 673 (1955) (Judgment notwithstanding verdict should have been granted since speeding was not the proximate cause of the accident).

It is important to keep in mind that the accident happened very quickly. There is no evidence that Myers' speed deprived her of an opportunity to take some action to avoid the collision. *See Traish v. Hasan,* 245 Md. 489, 494, 226 A.2d 573, 576 (1967) (Speed of defendant's car immaterial because another vehicle abruptly invaded the lane of traffic, creating an emergency that required him "to come to a

sudden stop in order to prevent a collision with the intruder."); *McFarland By & Through McFarland v. King*, 216 Neb. 92, 341 N.W.2d 920, 923–24 (1983) (If a situation is created so quickly that a motorist has no chance to avoid injury, there is no liability.); *Theonnes v. Hazen*, 37 Wash. App. 644, 681 P.2d 1284, 1285 (1984) (Speeding "is not the proximate cause of a collision when the vehicle is where it is entitled to be and the driver would not have had sufficient time to avoid the collision even if driving at the lawful speed.").

In *Faulkner v. Cummings*, 256 Md. 552, 261 A.2d 468 (1970), the mother of a child hit by a car when the youngster ran onto the road sued the driver. The mother claimed that the motorist had been negligent in not sounding her horn when the boy appeared. The jury returned a verdict for the mother, but the trial court granted a judgment N.O.V. for the motorist. On appeal, we affirmed the trial judge's decision and noted:

> "It is true that [the motorist] did not blow her horn, but because the impact was almost immediate, the absence of the blowing of her horn (assuming for the argument that she was obligated to blow the horn at all) cannot be considered as a proximate cause of the accident."

256 Md. at 558, 261 A.2d at 471.

The law holds a driver responsible for an accident only when he or she can be blamed for contributing to the event. Negligence that does nothing to cause a mishap cannot create accountability. We do not condone speeding; there are penalties for those who break the law regardless of whether their excessively fast driving leads to accidents.[3]

---

**3.** Maryland Code (1977, 1987 Repl.Vol.), Transportation Article § 21–801(a) prohibits anyone from driving on a highway at a speed "more than that which is reasonable and prudent under the conditions." Section 21–801.1 sets forth the maximum speed limits generally throughout the state. Violations of the rules of the road, such as speed limits, are punishable by fines and a point system that can result in a person's driving privileges being revoked. *See* Md.Code

Our focus is simply on causation: Was Myers' speeding a proximate cause of the accident? Given different facts, it might have been a cause. As noted above, for example, if Bright had eased his car slowly into Myers' lane of travel and there was evidence that she could have swerved or stopped in time had she been driving at or under the speed limit, this case might have gone to the jury. Or, if Myers had some warning that a car would be cutting across her lane even though she was on a through street, her speed might have been considered a factor in the accident.

It could be argued that had Myers been going slower, she would not have been at that location at the precise moment when Bright was trying to dash into the Burger King. In other words, speeding put her in the wrong place at the wrong time. It could be similarly argued that had she been going much faster she also would have avoided the accident. Seventy years ago, the Illinois Supreme Court stated:

> "If the illegal act is a mere condition which made it possible for the accident to occur, but is in itself no part of the accident, it will not bar recovery. It is, of course, an essential condition of most accidents that the injured party be where he was at the time he was in order for the injury to occur, and the fact that he would not have been there if he had not been violating the law is not, in itself, a defense."

*Lerette v. Director General of Railroads,* 306 Ill. 348, 137 N.E. 811, 814 (1922), *quoted in Hale v. Cravens,* 263 N.E.2d at 596–97. "Excessive or unlawful speed is not causal merely because it places a vehicle at a particular place at a particular time, but it is causal where it prevents or retards the operator from slowing down, stopping, or otherwise controlling the vehicle so as to avoid a collision." 2 *Blashfield* § 105.6 at 314–17 (footnote omitted).

In *Sun Cab Co. v. Faulkner,* 163 Md. 477, 163 A. 194 (1932), we rejected a claim that a Sun taxicab's rate of

(1977, 1987 Repl.Vol., 1991 Cum.Supp.), Transportation Art., §§ 16–401 through 16–407 and 27–101.

speed contributed to an accident it had with another cab that was being waved through an intersection by a police officer. In arriving at our decision, we made the following observation:

> "If negligence is found in the rate of speed at which the Sun cab was being driven, that fact alone does not, of course, answer the question of liability. The negligence must have been the cause of the collision. There would be no foundation in fact here for a holding that by driving at a reduced speed the Sun Company driver might have avoided the collision after the two cabs came within sight of each other. The contribution of the Sun cab to the accident appears to have been only that of being there at the moment, a circumstance which might have arisen with or without negligence in approaching the place." (Citations omitted.)

163 Md. at 479, 163 A. at 195. That reasoning applies equally to Myers' mere presence at this location when Bright blithely crossed her path.

Bright also contends that Myers was inattentive at the time of the accident and had been taking medication that affected her ability to drive properly. Her inattentiveness, he insists, is shown by the fact that the collision occurred even though she said she had a clear view of the road. The clear view, however, was in front, along her lane of travel, not around the pickup truck that blocked her view of Bright before Bright began to cross. The undisputed evidence is that traffic "was lined up there at the stop light" in the left turn lane. The line of traffic and the pickup truck obviously blocked her view in that direction. There is no indication that she would have spotted Bright any sooner had she been more attentive.

As for the medication, Myers had taken two prescription drugs before going to work on the morning of the accident and testified that she was feeling no effects when the crash took place that afternoon. Her doctor did not tell her she should not drive when taking them, and there is no indication that Myers was driving with her perception or reflexes

adversely affected by the drugs. As in the case of her supposed speeding, there is no evidence that more attentiveness by Myers or a decrease in her medicinal intake would have in any way altered the events that brought this case to court.

A trial judge should be reluctant to take an issue away from a jury. But, as we have noted, the judge can when a case contains no legally sufficient evidence to warrant a jury's deliberations. This is such a case. Judge Wright properly spared the jurors from having to ruminate over what was manifest and being enticed into pure speculation. The facts lead unquestionably to the conclusion that Bright's negligence caused the accident that injured Myers, whose rate of speed contributed nothing to the event except to put her in harm's way.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REINSTATE THE JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.

ROBERT M. BELL, Judge, dissenting.

I agree totally with the Court of Special Appeals that the Circuit Court for Frederick County erred when it, relying on the "antiquated version [of the boulevard rule], which gives favored drivers the right-of-way regardless of contributory negligence," see *Myers v. Bright*, 327 Md. 395, 404, 609 A.2d 1182, 1186 (1992), granted the petitioner's (Ida Patricia Myers') motion for judgment. *Bright v. Myers*, 88 Md.App. 296, 305, 594 A.2d 1177, 1181 (1991). Because the boulevard rule is inapplicable to the facts *sub judice*, the intermediate appellate court correctly held that the issues of negligence and contributory negligence, rather than being resolved on a motion for judgment, should have been submitted to the jury for its determination. *Id.* at 305, 594 A.2d at 1181.

The majority rejects the Court of Special Appeals' conclusion that the trial judge's ruling was based on the boulevard rule, expressing its belief that "the trial judge was merely making an aside about the boulevard rule and recognized that Myers' contributory negligence would have precluded recovery." 327 Md. at 404, 609 A.2d at 1186. Its support for that belief—that before the trial judge referred to the boulevard rule, he had stated " 'I don't see that [Myers] did anything that contributed to the accident at all,' " *id.*,—overlooks the fact that the argument on the motion for judgment proceeded on the basis, and on no other, of the boulevard rule: the petitioner argued "there is very clear evidence that Mr. Bright did take away the right-of-way of Ms. Myers in violation of the boulevard rule." Moreover, in granting the petitioner's motion, the trial judge spoke in terms of an absolute right-of-way: "Obviously Mr. Bright had a duty to yield the right of way to Mrs. Myers"; "[Mrs. Myers] has the right to assume that no one is going to take the right of way from her"; and "[s]he was travelling perhaps in excess of the posted speed limit. But that by itself is not evidence of contributory negligence from one who must assume that no one is going to take the right of way." As Judge Alpert, speaking for the Court of Special Appeals, so aptly observed:

> [T]he trial court incorrectly stated that appellee had "the right to assume that no one is going to take the right of way from her." No such absolute right-of-way, as is found under the boulevard rule, exists pursuant to section 21–402[1]. Whereas a directed verdict[2] is appropriate in

---

1. Maryland Code (1977, 1987 Repl.Vol.), Transp. Article, § 21–402(a) provides:
    (a) *Turning left.*—If the driver of a vehicle intends to turn to the left in an intersection or into an alley or a private road or driveway, the driver shall yield the right-of-way to any other vehicle that is approaching from the opposite direction and is in the intersection or so near to it as to be an immediate danger.

2. Maryland Rule 2–519(a) provides for a "motion for judgment" to be made at the end of the plaintiff's case or, in a jury trial, at the close of all the evidence. The motion for judgment was formerly the "motion

boulevard law cases where the favored driver was proceeding lawfully because of the automatic finding of negligence as a matter of law, *see, e.g., Dail [v. Tri–City Trucking Co.,* 39 Md.App. 430, 432, 387 A.2d 293, 295, *cert. denied,* 283 Md. 741 (1978) ], the language of section 21–402 indicates that it is incumbent upon the trier of fact to determine whether the car "approaching from the opposite direction" was or was not so near so as to constitute "an immediate danger." As the Court of Appeals stated in *Meldrum v. Kellam Distributing Co.,* 211 Md. 504, 128 A.2d 400 (1957):

> Where the nature and attributes of an act relied upon to show negligence contributing to an injury sustained can only be determined correctly by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it and it is not for the court to determine its quality as a matter of law.

*Id.* at 511, 128 A.2d [at 403] (applying section 21–402(a)). In this case, the jury must determine whether Myers' car was near enough to create "an immediate danger" of which Bright should have been aware. Additionally, the jury must consider whether Myers acted in a contributorily negligent manner, *i.e.,* whether the speed at which she was travelling was excessive.

88 Md.App. at 304–05, 594 A.2d at 1181.

Addressing the contributory negligence of the petitioner, the majority asserts: "We must keep in mind that there is no hard evidence that Myers was, in fact, speeding. There is merely a possibility that she was driving her car a few miles an hour above the posted limit." 327 Md. at 404, 609 A.2d at 1186. That assertion is, to say the least, just a little curious.

There was ample evidence from which the jury could have found that the petitioner was speeding and, therefore, con-

---

for directed verdict." Consequently, under present practice, the court did not "direct a verdict," rather it "granted judgment."

tributorily negligent.  Much of that evidence came from the testimony of the motorcyclist, upon which the majority also heavily relies.  It is true that the motorcyclist, who was behind the pickup truck, the driver of which motioned the respondent (Matthew Lynn Bright) to proceed, did state, on direct examination, that he could not say whether the petitioner was speeding.  On the other hand, that same witness provided evidence critical to the respondent's case.  He noted, in the first place, that the respondent "almost made it across the road but [the petitioner] nailed him in the back of his car."  Just as important he testified on cross-examination, as follows:

Q.  [By the respondent's counsel] And you're unsure of the speed?

A.  Like I said the light had changed.  The only thing I can think is she was going a normal speed.  Is the only thing I can think because the light had changed for her to go.

Q.  *Did she seem to come out of nowhere?*

A.  *Yes she did but there was nothing in front of her at that time.*  Because those other cars had already cleared out.  That's why the guy in the pickup truck motioned for him to come across.

Q.  *And did you also believe that the area was clear until she came out of nowhere?*

A.  I can see the area was clear.  I mean in front of her ... in front of her.  I could see that there was nothing in front of her.

Q.  *But you did indicate that she seemed to come from out of nowhere,* is that correct?

A.  *Well yes* but I was in the lane to turn left and I really wasn't paying any attention until the guy in the truck motioned for him to come across.  And like I said, me being on my motorcycle I try to watch everything.  I look in my mirror of my motorcycle and I seen her coming.  (emphasis added)

In addition to the foregoing, from the petitioner's testimony, the jury could have found that she was travelling above the speed limit by as much as 10 miles.

The majority suggests that even if the petitioner were speeding, a fact that the court did not discount, judgment in favor of the petitioner as a matter of law was nevertheless required because the evidence did not demonstrate that her speed was the proximate cause of the accident. By so holding, the majority assumes, on the basis of mere conjecture, the result it wishes to achieve. This record is skimpy, at best, on the question of where the various cars were in relation to each other at the critical time. All we know is that the respondent's left turning car was waved across by the driver of a truck waiting to turn left. What we don't know is where, vis-a-vis the respondent's car, the petitioner's was at the time. While the petitioner's testimony would suggest that she was near the intersection, the motorcyclist's testimony may be otherwise construed; he indicated, as we have seen, that she appeared "to come from out of nowhere." In any event, we know that the left turning vehicle almost made it into the parking lot before it was hit in the back. How these circumstances relate to the duties and responsibilities of the parties to the accident is a matter for the jury's determination, on proper instructions, not the trial court's on a motion for judgment.

The majority recognizes that:

In some circumstances, someone planning to turn left might make a reasonable observation of the oncoming motorist and realize that (1) the driver is not obeying the speed laws and (2) the turn cannot be made safely. Under other circumstances, however, the turning driver, making a reasonable observation of traffic, will not be able to recognize that the oncoming vehicle is moving faster than the law allows and might reasonably proceed into the turn. Factors that might mask an approaching vehicle's speed from a prudent driver—and thus lead him or her to misjudge the timing of its arrival—could include

weather conditions, distance, topography, angle of observation, etc.

Thus, a speeding driver may not appear to necessarily constitute "an immediate danger" to a left-turning driver, even when the laws of physics dictate that there will be a collision if the turning driver proceeds. Drivers, including those intending to turn left, are ordinarily entitled to assume that other drivers are obeying the law. Visual or aural information sufficient to overcome the ordinary assumption that the approaching driver is travelling within the speed limit might not be available.

327 Md. at 401–402, 609 A.2d at 1184–1185. The majority suggests that because the respondent could not see, he had no opportunity "to gauge the speed or location of any oncoming vehicle" and, thus, the finding of negligence, as a matter of law, was justified.

What the majority fails to recognize is that the respondent's negligence does not answer the question whether the evidence was sufficient to justify submission of the case to the jury on the petitioner's contributory negligence. That the respondent may not have looked and, therefore, may have been negligent does not negate, or relieve, the trier of fact of the need to resolve additional issues of proximate causation that may have been presented. The facts and circumstances of this case indicate that even after the respondent was found negligent, a real issue persisted as to the petitioner's contributory negligence, which should not have been resolved on a motion for judgment, using conjecture and speculation, on the basis of factual findings made by the court. When a case is tried to a jury, finding facts is the province of the jury, not the trial court.

I would affirm the judgment of the Court of Special Appeals.