MINER, Judge,
dissenting.
Because I am unable to discern how the operative facts in the case at bar materially differ from those found to be dispositive in *149 Kerfoot v. Waychoff, 501 So.2d 588 (Fla.1987), I respectfully dissent from the majority’s determination to affirm the judgment of the trial court. For the reasons which follow, I would reverse the trial court’s denial of appellant WED’s motion for directed verdict.
In Kerfoot, Severson stopped his vehicle at an intersection in the inside northbound lane of traffic. Waychoff’s vehicle was in the southbound left turn lane, waiting to execute a left turn. Severson signaled Waychoff to proceed with the left turn. After turning left in front of Severson’s vehicle, Waychoff collided with Kerfoot’s motorcycle which was proceeding north in the lane adjacent to Severson’s vehicle. Kerfoot sued Waychoff and Severson for his injuries. The trial court granted Sever-son’s motion for a directed verdict and the Fourth District Court of Appeal affirmed. On review, the Florida Supreme Court specified its reasons for affirming the trial court’s entry of a directed verdict for Sev-erson:
In the instant case, the signaling driver, Severson, was in an almost impossible position to determine if the adjacent lane was clear of motor vehicles. Severson’s own lane was full of traffic, and Kerfoot was approaching from the rear in an adjacent lane. The turning driver, in the instant case, was in fact facing the oncoming traffic. Under these facts, Sev-erson, as the signaling driver, could not determine the status of traffic in the outside northbound lane.
Kerfoot, 501 So.2d at 589.
At least one court has articulated what is meant by the signaling driver’s ability to ascertain whether the person receiving the signal may safely proceed. In Devine v. Cook, 3 Utah 2d 134, 279 P.2d 1073 (1955), the Utah Supreme Court found the trial court had erred in refusing to grant a directed verdict in favor of the signaling driver where the signaled driver collided with a vehicle approaching from the rear of the signaling driver. The court noted, however, certain conditions under which the signaling driver may incur liability, such as when signaling someone to proceed on a hill or at night time. Id. at 1083. In Massingale v. Sibley, 449 So.2d 98 (La.Ct.App.1984), the meaning and reasonableness of the driver’s signal and the reliance thereon were held to be questions for the jury. In Massingale, however, the signaling driver had both colliding vehicles clearly within his immediate field of view in front of him prior to the accident. No accident vehicle overtook the signaling driver from the rear.
In my view, appellees’ reliance on Tellechea v. Coca Cola Bottling Company of Miami, Inc., 530 So.2d 1083 (Fla. 3rd DCA 1988), is misplaced. While it may be argued that the position of a truck driver or in the instant case, a bus driver, seated high above the road with side rear view mirrors puts the truck driver in a superior position to ascertain whether the signaled driver may safely proceed, I believe that such an argument would be a misguided application of Kerfoot. In Kerfoot, although the supreme court expressed the view that the signaling driver was not in a position to see vehicles approaching from the rear, the court’s reliance on Devine and Government Employees Insurance Company v. Thompson, 351 So.2d 809 (La.Ct.App.1977), suggests that the ability to see traffic approaching from the rear by mirror is not sufficient to find reasonable reliance on the signal to proceed. In Thompson, the signaling truck driver was also waiting at an intersection with a line of traffic behind him. The opinion does not describe the type or size of the truck, or whether the truck was equipped with a right rear view mirror. The truck driver signaled an oncoming car to turn left in front of him and upon doing so, the signaled driver collided with a car approaching from the rear of the truck in an adjacent traffic lane. On these facts, described as “identical” by Justice Overton in Kerfoot, Thompson held the dismissal of the suit against the truck driver proper. On the other hand, Telle-chea may be explained by the fact that the case came to the appellate court on review of summary judgment entered for defendant. Tellechea held it error to grant summary judgment in favor of defendant Coca Cola where defendant-movant failed affir *150 matively to demonstrate the absence of genuine issues of material fact as to the apparent meaning and appropriate interpretation of the hand signal and whether the defendant’s truck driver seated high above the road and presumably equipped with a right-hand rear view mirror was in a position to determine whether the adjacent lane was clear of motor vehicles. In the present case, by comparison, it is conceivable that questions of fact with respect to the voluntary assumption of a duty by WED’s bus driver and the negligent exercise of that duty in signaling may have been sufficient to preclude summary judgment for WED (had such a motion been filed) yet insufficient to preclude directed verdict for defendant WED even after taking the facts and all reasonable inferences therefrom in the light most favorable to the third party plaintiff. As explained in Suggs v. Allen, 563 So.2d 1132 (Fla. 1st DCA 1990) and Zygmont v. Smith, 548 So.2d 902 (Fla. 1st DCA 1989), a motion for summary judgment is a pretrial mechanism designed to test whether there exists any issue as to a material fact, and whether the moving party is entitled to judgment as a matter of law. By contrast, a motion for directed verdict is the means whereby the sufficiency of the evidence adduced at trial is tested. Obviously, whether a factual issue exists is quite a different matter from whether a fact is proved. Id. at 903.
To be remembered is the fact that WED’s bus driver, for some reason, was not located and hence did not testify. For all the record shows, the hand signals by the bus driver testified to by Ms. Neary and her son were but a recognition that Ms. Neary gained the right-of-way by arriving at the intersection first and positioning her vehicle, in her words, “in an area that the bus driver could not have made his left turn without hitting me.” Although Ms. Neary recalled the position of the bus at the time of the “wave through” to be straight in the inside lane facing her, Ms. Beauchamp, the driver of the vehicle which collided with the Neary automobile, was not so sure. She testified that “[the bus] turned in right here (indicating on an evi-dentiary sketch of the scene), the bus had turned in.... The best I can recall, it was something — straight or slight angle or something.” If the Kerfoot facts recounted above did not raise a jury question with respect to the signaling driver’s ability to determine the status of traffic approaching from the rear in the outside northbound lane, then neither do the instant facts.
Finding the present facts indistinguishable from Kerfoot, I would find no reasonable view of the evidence adduced sufficient to support a finding that the WED bus driver voluntarily assumed a duty to safely direct Ms. Neary across lanes of oncoming traffic. See also Dace v. Gilbert, 96 Ill.App.3d 199, 51 Ill.Dec. 869, 421 N.E.2d 377 (1981) (error to deny signaling driver’s motion for summary judgment where plaintiff’s vehicle approached from the rear of signaling driver but signaled driver did not actually rely on signal (not proximate cause)); Kemp v. Armstrong, 40 Md.App. 542, 392 A.2d 1161 (1978) (error to deny signaling driver’s motion for directed verdict where plaintiff’s vehicle approached from the rear of signaling driver but signaled driver did not actually rely on signal (not proximate cause)).
In the case at hand, even assuming that the WED bus driver was capable through use of his side rear mirror of observing traffic approaching from the rear in the outside northbound lane, and even assuming that Ms. Neary actually relied on whatever signal was given, the facts here do not justify departing from Kerfoot.